**In the Matter of John D. CARR, Debtor/Appellant.**

No. 4:CV92–3405.
Bankruptcy No. BK 86–83599.

United States District Court, D. Nebraska.

Sept. 14, 1993.

W. Eric Wood, James D. Loerts, Dwyer, Pohren, Wood, Heavey, Grimm, Goodall & Lazer, Omaha, NE, for appellant.

Chapter 13 Trustee—Kathleen Laughlin.

Marilyn N. Abbott, Omaha, NE, for Chapter 13 Trustee.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on appeal, pursuant to Bankruptcy Rule 8001 et seq., from the decision of the United States Bankruptcy Court[1] dated September 18, 1992, wherein the Court determined that the debtor was ineligible for discharge until certain fees were paid to the Trustee.[2] For the reasons more fully set out below, the order of the bankruptcy court is affirmed.

## I. FACTUAL/PROCEDURAL BACKGROUND

The debtor filed a chapter 13 bankruptcy petition on December 18, 1986. (Rec. on Appeal at 71–4.)[3] Under the terms of the plan, the debtor was to make payments of $100.00 for 36 months, totaling $3,600.00, (Id. at 71.) As to payment of claims, the plan provided that "[a]ll claims entitled to a priority under 11 U.S.C. § 507 shall be paid in full and deferred cash payments unless the holder of a particular claim shall agree to a different treatment of such claim." (Id.) Payments of the two secured creditors were to be paid outside the plan. (Id. at 72–3.) Accordingly, the funds received by the Trustee pursuant to the plan were to be used by the Trustee to:

pay the following claims in the priority indicated:

1. All claims entitled to a priority under 11 U.S.C. § 507.

2. After payment in full of all claims entitled to a priority, the remaining sums received by the Trustee pursuant to this Plan shall be paid, on a pro-rata basis, to approved and allowed general unsecured claims.... (Id. at 73.)

The Trustee's initial calculations of the debtor's plan reflected that the plan would be sufficiently funded by payments totaling $3,600.[4] No objections were filed to the original plan, and the debtor's plan was confirmed on April 10, 1987. On July 24, 1987, the trustee filed a Motion to Allow Claims. (Id. at 33.) The Motion to Allow Claims listed the amount due each creditor based upon the claim filed by the creditor.[5] Specifically listed in the Motion were amounts of $605.36 and $1,905.47 to be paid to the Trustee. (Id.) The order approving the claims noted that all claims which were itemized in the Motion to Allow Claims would be deemed allowed unless the debtor or other party in interest objected within 30 days. (Id.) Although the debtor filed an objection to one of the claims that was listed, no objection was filed to the Trustee fees that were claimed. (Id. at 32.)

When the debtor had made the 36 monthly payments, he moved for discharge pursuant to 11 U.S.C. § 1328(1), which provides that "[a]s soon as practicable after completion by debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by

---

1. The Honorable John C. Minahan, Jr., United States Bankruptcy Judge.

2. This appeal was originally assigned to the Honorable Warren K. Urbom. This appeal was reassigned to me from the docket of Judge Urbom on August 2, 1993. The case was reassigned to me in light of the transfer of my duty station from Omaha to Lincoln. (See filing 4.)

3. For purposes of this appeal, the court has numbered the record on appeal in the bottom right-hand corner of each page.

4. The trustee's worksheet reflected that the subtotal for payments for all claimants and administrative costs was $1002.91. This was based on

a subtotal of plaintiff's estimate of income taxes owed $692.70 ($655.70 in federal taxes and $37.00 for Nebraska state taxes), and the subtotal for anticipated payments to unsecured creditors of $310.21. The projected trustee fees based on these payments was $111.44 (the worksheet states that this is based on the subtotal of $1,002.91 divided by 9). There was then listed a "TRUSTEE FEE (on direct payments—if allowed)" in the amount of $2,485.65. This fee was based on the projected amount to be paid directly by the debtor to the secured creditors of $24,856.46. (See Trustee's Exhibit 6.)

5. The motion was granted pursuant to Local Bankruptcy Rule 27 which will be discussed more fully *infra*.

the plan." [6]   The debtor moved for the discharge claiming that all payments required under the plan had been paid to the Trustee and that the debtor was therefore entitled to discharge.   The Trustee filed a resistance to the motion for entry of discharge claiming that since her fees were entitled to priority under § 507, discharge should be denied as her fees had not been paid.[7]

By Journal Entry filed September 21, 1992, the Bankruptcy Court held that the debtor should be required to pay the priority claim of the Chapter 13 Trustee.   The Bankruptcy Court found that the debtor was not entitled to a discharge because payments provided for in the plan had not been made in that the plan provided for payment of "all claims entitled to priority under 11 U.S.C. section 507."   The Court specifically noted that the debtor had not objected to the special claims of the Chapter 13 Trustee for fees on the direct payment of secured creditors that were listed in the Motion to Allow Claims.   The Court held that payments under the plan had not, in fact, been completed and the plan could be modified pursuant to 11 U.S.C. § 1329.

## II.   DISCUSSION

### A.   Standard of Review

■   The standard of review in bankruptcy appeals is well established—this Court may review the Bankruptcy Court's legal conclusions **de novo,** but the Bankruptcy Court's findings of fact may not be set aside unless clearly erroneous.   Bankr.R. 8013; *Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir.1987).   There being no issue of fact raised on appeal, this matter will be reviewed solely as a matter of law.

### B.   Issue on Appeal

The ultimate issue on appeal is this: When a debtor's Chapter 13 plan proposes to pay a specified number of payments and also proposes to pay 100% of priority claims, is the plan satisfied when the specified number of payments have been made as called for under the Plan, even though 100% of the priority claims have not been paid?   The answer to the foregoing question is "No".

### 1.   Background

It is helpful to understand the interplay between Chapter 13 plans and how creditor claims are properly handled under the Nebraska Local Bankruptcy Rules.

When a Chapter 13 plan is proposed it is not uncommon for all interested parties, including the debtors and creditors, to be unsure as to the nature and amount of claims.   Indeed the United States Court of Appeals for the Fifth Circuit has recognized that "When a plan is filed ... it is unlikely at that time that creditors have even contemplated ... filing proofs of claim." *In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985).

In order to expedite the processing of Chapter 13 plans, many such plans, like this one, generally provide that "All claims entitled to priority ... shall be paid in full" (Record on Appeal at 73).   The plan is intentionally left general, although the debtor is also required to describe the claims as the debtor understands them in a separate document (called a "Chapter 13 Statement).

When a debtor proposes to pay "All claims entitled to priority," the obvious question is: what is the nature and amount of each claim entitled to priority?   If the debtor does not specifically state the precise nature and amount of priority claims in the plan due to the fact that the debtor does not specifically know, a party having a priority claim may be uncertain as to whether such a claimant should object to confirmation of the plan.

Rather than require creditors to object to confirmation of plans simply as a matter of

---

**6.** The Court recognizes that there are more events which occurred prior to the debtor filing the motion for discharge which is the subject of this appeal.   The court has concluded, however, that for purposes of this appeal, a recitation of those events is unnecessary.

**7.** The Trustee's fees are entitled to priority pursuant to 11 U.S.C. § 507(a)(1).

caution, the United States Bankruptcy Court for the District of Nebraska devised a procedure. See *Matter of Stein*, 63 B.R. 140, 146 (D.Neb.1985).[8] Generally speaking, the procedure provided that it was not necessary for a creditor to object to a Chapter 13 plan in order to assert a claim that was generally dealt with under the plan, provided that the proof of claim was timely filed.[9] *Id.* A procedure for the debtor to object to the claim was devised as a part of the process. *Id.*

In this way ambiguities between the plan and proofs of claim could be dealt with more selectively without holding up confirmation of the plan and requiring every creditor to file a pro forma objection.

This procedure change, as set forth in *Stein*, was codified at Nebraska Local Bankruptcy Rule 27, adopted June 2, 1986. Rule 27, which "govern[s] all cases filed on or after April 1, 1986," provides that:

If the Trustee does not object to [creditors] claim[s], the Trustee will then file a motion for allowance of such claim after the expiration of ninety (90) days from and after the first date set for the meeting of creditors.... Within five (5) days from the date of the motion to allow claims, the Trustee shall serve upon the Debtor and the Debtor's attorney, a copy of the motion to allow claims. Within thirty (30) days from the date of the motion, the Debtor may object to the allowance of a claim.... **If the Debtor does not file a written objection to Trustee's Motion ... within the time period required, the motion to allow claims shall be granted ex parte....** (emphasis added).

▆ Accordingly, I find that the amounts set forth in the Motion to Allow Claims filed by the Trustee, govern the amount of the priority claims. In that mo-

tion, the amounts set forth as priority claims are (1) $1,209.79 owed the Internal Revenue Service; (2) $605.36 owed to Kathleen Laughlin—Trustee; and (3) $1,905.47 owed to Kathleen Laughlin—Trustee. Therefore, the total amount required to be paid for priority claims, pursuant to the amounts scheduled in the motion to allow claims, was $3,720.62. More specifically, the amount owed for Trustee fees was $2,510.83.

### 2. Payments "provided for" under the plan.

Although the debtor argues that this case "involves the very simple issue of whether a confirmed Chapter 13 plan can be modified after all scheduled payments required under the plan have been completed," (Brief of Appellant at 4), I find that the real issue before this court is the question of when a debtor is entitled to discharge. According to 11 U.S.C. § 1328, "as soon as practicable after completion by the debtor of **all payments under the plan**" the court shall grant the debtor a discharge of all debts provided for by the plan. (emphasis added.) Therefore, the question is what is meant by completion of "all payments under the plan."

Under the terms of the plan, the debtor was to make payments of $100.00 for 36 months which would total $3,600.00, (Id. at 71.) As to payment of claims, the plan provided that "[a]ll claims entitled to a priority under 11 U.S.C. § 507 shall be paid in full and deferred cash payments unless the holder of a particular claim shall agree to a different treatment of such claim." (Id.)

Therefore, reading the terms of the plan, which provides for full payment of all priority claims, in conjunction with the Motion to Allow Claims which provided for $3,720.62 in priority claims, the debtor was

---

**8.** *Stein* involved a situation where the plan proposed to pay secured claims an amount not less than the value of the property on which the claimant had a non-voidable lien, with the balance to be treated as unsecured. The plan was confirmed without objection. A proof a claim was filed which asserted a secured value greater than anticipated by the debtor. The question in *Stein* then was whether the proof of claim could

be considered given the fact that the plan had been confirmed without objection. The court held that the proof of claim could be considered.

**9.** In this case there is no contention that the Trustee's actions were untimely.

obligated to fully pay these claims in order to be entitled to a discharge. Despite this obligation, the debtor's plan only provided for payments totaling $3,600. Therefore, as of July 24, 1987, the date the Bankruptcy Court granted the Motion to Allow Claims, the debtor's proposed payment of $100 a month for 36 months was insufficient to cover the amount needed to pay all priority claims in full.[10] Consequently, the issue before this court is: what is to be done when there is an ambiguity in the plan such that a statement in the confirmed plan provides that the debtor will pay 100% of all priority claims, yet the amount and number of payments provided for in the plan do not yield enough to accomplish what the plan provides?

Although this court has been unable to find any cases which discuss "completion of payments" in relation to § 1328, the court has found precedent dealing with defining what is meant by these words under § 1329. Section 1329 provides for modification of a plan "at any time after confirmation of the plan but **before the completion of payments under such plan.**"

In *In re Phelps*, 149 B.R. 534 (Bankr. N.D.Ill.1993), the problem before the court was what happens where the percentage and duration of payments set out in the order confirming the plan are inconsistent, because the amount due unsecured creditors actually filing timely proofs of claims is less than the total unsecured debt scheduled by the debtor. The *Phelps* court observed that the "Bankruptcy Code offers no clue as to how this question should be resolved," but noted that in *In re Chancellor*, 78 B.R. 529, 530 (Bankr.N.D.Ill.1987), it was held that "completion of payments" occurred "when the debtor has paid the percentage owed to each class of creditors as provided for in the plan." *In re Phelps*, 149 B.R. at 537. The *Phelps* court agreed with the result in *Chancellor*, stating that "[t]he substance of a plan looks to the nature of the debtor's obligation to the debtor's creditors, not to the number of

payments proposed." *Phelps*, 149 B.R. at 537.

The court then proposed a few examples to make its point. One example fits this case:

[S]uppose the Debtor gets a 100% 43 month plan confirmed, but allowed unsecured creditor claims exceed the amount of unsecured debt scheduled by the Debtor. Suppose further that the Debtor pays the Trustee the payments required by the order of confirmation religiously for 43 months, but due to the higher than expected amount of allowed unsecured claims, those payments are only enough to afford unsecured creditors an 85% dividend. **Clearly, the Debtor has not completed her payments under the plan.** *Id.* at 537 (emphasis added.)

See, also, *Matter of Casper*, 154 B.R. 243 (N.D.Ill.1993) (holding that bankruptcy courts should look to substance of plan and nature of debtor's obligation to allowable creditors to discern when payments under Chapter 13 plan are completed; number of payments or duration of Chapter 13 plan is not controlling in determining when payments under the plan are completed).

The Journal entry entered by Judge Minahan, wherein he denied the debtor's Motion for Discharge, mirrors the above discussion:

The special claims of the Chapter 13 Standing Trustee constitute a priority claim pursuant to 11 U.S.C. § 507. The confirmed Chapter 13 plan unequivocally (sic) states in Section II that the "claims entitled to priority under 11 U.S.C. § 507 shall be paid in full...."

A debtor is not entitled to a discharge order in a Chapter 13 case until "after completion by the debtor of all payments under the plan...." See § 1328(a). On the facts of this case, the debtor has completed making the $100.00 per month payments provided for in the plan, yet the debtor has not paid the claims entitled to priority under § 507. The plan specifically provides that the § 507

---

10. The problem of insufficiency in funding for the plan was further compounded when the debtor's attorney filed an application for additional compensation. This application, requested $420.20 was filed on December 15, 1987, and was approved by the Court on January 28, 1988.

claims would be paid in full. Since those claims have not been paid, I conclude that the debtor is not entitled to a discharge order under § 1328.

Since the § 507 claims are not paid, payments under the plan have, in fact, not been completed. Therefore, the plan could be modified pursuant to § 1329 to provide for payment of the unpaid § 507 claim.

.    .    .    .    .

Debtor argues that the plan provides for the debtor to pay only $100.00 per month for 36 months and that those payments are completed. The $100 payments per month simply do not sufficiently fund the plan. (Record on Appeal at 42–3.)

I find that Judge Minahan correctly concluded that the debtor was not entitled to a discharge in that he had not yet completed "all payments under the plan" as required by § 1328.[11] Although the debtor did complete the 36 payments as required, the payments did not total the amount needed to pay 100% of the "claims entitled to priority under 11 U.S.C. § 507" as also required by the plan.

Accordingly, I find that the Journal Entry entered by Judge Minahan on September 18, 1992, wherein the debtor was denied a discharge, should be affirmed. A Judgment will be entered in accordance with this Memorandum Opinion.

---

**11.** Debtor contends that this issue was already determined previously in this case by Judge Urbom in relation to an earlier appeal. However, the issues involved in the two appeals are not the same. In the earlier appeal, Judge Urbom stated that "[t]he debtor completed all payments provided for under the confirmed plan in April 1990." This finding was in relation to an I.R.S. attempt to increase the amount of the claim that was listed on the Motion to Allow Claims. In that instance, Judge Urbom found that all payments had been made to the I.R.S. which fully paid the amount that it had originally claimed and that the debtor had promised to pay. In other words, the debtor had promised to pay 100% of the I.R.S.'s claim of $1,200 and the debtor had done so. Therefore, inasmuch as all payments under the plan had been made to the I.R.S., the I.R.S. could not come into court and ask to increase the amount it was to be paid. In the current appeal, however, the Trustee is not trying to increase the amount of its claim, but rather is contending that it has not received all that it had claimed and had been promised, and therefore, the debtor should be required to continue making payments. In this case, the debtor has not made all the payments required under the Plan because as to the Trustee, the objecting party, the debtor has not yet paid 100% of what he promised to pay to the Trustee.