**In re William R. MARTIN and Norma J. Martin, Debtors.**

**Bankruptcy No. 96–17812–WCH.**

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

March 17, 1999.

William F. Markley, Wakefield, MA, for Debtor.

David G. Baker (on the brief with Gary Donahue), Boston, MA, for U.S. Trustee.

Richard Gottlieb, for National Consumer Law Foundation.

## DECISION ON DEBTORS' MOTION TO MODIFY CHAPTER 13 PLAN

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. *Introduction*

The matter before the Court is whether a debtor may, as a result of a mortgage refinancing, modify a plan post-confirmation to provide for a lump-sum payment to satisfy 10% of the filed claims, a sum less than 10% of the projected claims scheduled and provided for in the original plan. As explained herein, I conclude that (1) the Chapter 13 trustee may raise an objection to a post-confirmation modification under 11 U.S.C. § 1325(b); (2) upon objection, modification is appropriate only when an amended plan satisfies the requirements of 11 U.S.C. § 1325(b)(1) based upon the debtor's financial condition at the time of modification; (3) a lump sum payment to satisfy the remainder of a plan is appropriate so long as it includes any increased disposable income during the remainder of the plan; and (4) modification also re-

quires satisfaction of the "best interests test" which will be applied based upon a liquidation analysis at the time of the modification. Because the Debtors' motion to modify does not satisfy these requirements, their motion is denied.

### II. *Background*

William and Norma Martin (the "Debtors") filed for relief under Chapter 13 of the United States Bankruptcy Code on October 11, 1996. In Schedule A of their petition, the Debtors listed an interest in a single family house (the "Property"). The Debtors listed the Property as having a value of $157,000 and encumbrances totaling $117,000. In Schedule C, the Debtors claimed an exemption of $16,450 in the Property. In Schedule J, the Debtors disclosed that their excess monthly income is $414 and that they would be making monthly payments of $272.

When they filed for relief, the Debtors filed a Chapter 13 Plan (the "Plan").[1] The Plan provides for thirty-six monthly payments of $272 in order to pay 10% of the $87,965.64 projected unsecured claims and the Trustee's fees. The Plan also provides for the Debtors to pay their secured claims outside of the Plan. In the liquidation analysis, the Debtors value the Property at 85% of its fair market value or $133,450.[2] The liquidation analysis reveals that there would be no equity available upon liquidation after the encumbrances and exemption are deducted from the discounted fair market value.

On December 2, 1996, I signed the Order of Confirmation (the "Order"). The Order provides that the Debtors will pay $272 per month until further order of the Court. It further provides that upon confirmation, all property of the estate vests

---

**1.** The Plan did not conform to Official Local Form 3, "Chapter 13 Plan and Cover Sheet".

**2.** It is unclear to the Court why the Debtors discounted the fair market value by 15%. Such a discount is not contemplated in Official Local Form 3, "Chapter 13 Plan and Cover Sheet". In that form, a debtor is asked

to provide the fair market value of the property and no more. While some courts have allowed for a reduction from the fair market value the hypothetical cost of a sale in a Chapter 7, this Court has not ruled on that issue.

in the Debtors. Lastly, the Order states that "The debtor's [sic] Plan provides for 10% dividend payment to unsecured creditors in the present indicated total of $87,-965.64. The final percentage may be increased up to 100% in accordance with rule 3002(c)."

On October 9, 1998, the Debtors filed a motion requesting authorization to refinance the Property. In paragraph 4 the Debtors disclose that "[t]he terms of said refinance are as follows: $132,900 mortgage, at an APR of 10.990%. The Debtors' monthly principal and interest payment would become $1,258.83." In the motion, the Debtors explain that they were refinancing to lower their monthly payments and to use the proceeds to satisfy the remaining balance of the Plan. Receiving no objection, I granted the motion on October 21, 1998.

Also on October 9, 1998, the Debtors filed their "Motion to Approve Debtors' Post–Confirmation First Amended Chapter 13 Plan." In the proposed amended plan (the "Amended Plan"), the Debtors represent that the filed unsecured claims total $82,720 and the Amended Plan provides for a 10% payment of those claims or $8,270; that is, the Debtors propose to reduce their monthly payment from 10% of the claims as scheduled to 10% of the claims as timely filed. In the Addendum to the Amended Plan, the Debtors propose to apply the proceeds of the refinancing of their home to the balance due under the Plan thereby satisfying their obligations.[3]

The Chapter 13 Trustee (the "Trustee") filed an objection to the confirmation of the Amended Plan. The Trustee argues that unless the Debtors propose to pay 100% of their unsecured claims, they must

continue to make payments for 36 months, citing 11 U.S.C. § 1325(b)(1)(B).

I held a hearing and took the matter under advisement. The Debtors and the Trustee filed briefs in support of their arguments. Additionally, the Court received an amicus curiae brief from the National Consumer Law Center (the "NCLC").

### III. *The Arguments*

#### A. *The NCLC and the Debtors*

The NCLC and the Debtors contend that the issue before the Court is whether it is permissible for Chapter 13 debtors to apply the exempt proceeds from a refinancing to satisfy the remaining balance under their Chapter 13 plan in satisfaction 11 U.S.C. 1325(a)(4) when that payment results in the unsecured creditors receiving less than 100%. They argue that such action is permissible because § 1325(b)(1)(B) requires only that a debtor pay into a plan the debtor's *projected* disposable income for a period of three years. Therefore, there is no prohibition against a debtor satisfying that amount prior to the expiration of the three years. The NCLC and the Debtors further contend that 11 U.S.C. § 1329 precludes the Chapter 13 Trustee from applying the "best efforts" test to a proposed modification.[4]

#### B. *The Chapter 13 Trustee*

The Trustee contends that the Debtor and the NCLC have misstated the issues before the Court. The Trustee correctly points out that the Debtors are not proposing to use exempt equity to satisfy the balance of the Plan. The Trustee is also correct that the Amended Plan proposes not only to prepay the Debtors' obligations

---

**3.** The Debtors have made payments totaling approximately $5,900. In the Amended Plan, the Debtors subtract that figure from $8,270 to arrive at the balance due on the Amended Plan.

**4.** The Debtors also argued that because the Motion to Refinance spelled out their inten-

tions with respect to the Amended Plan, the Trustee now is precluded from objecting to the modification. I disagree. A motion to refinance is not the equivalent of a motion to modify a plan. The latter is subject to a different set of standards than the former. *See* 11 U.S.C. § 1329.

under the Plan but seeks as well to reduce those obligations due to the amount of the filed unsecured claims totaling less than the amount of such claims projected in the Plan.[5] The Trustee states that the issue before the Court is whether the Court can confirm, over the Trustee's objection, the Amended Plan in which the Debtors do not commit their "excess income to payments under the plan, as modified, for a total of three years beginning on the date the first payment under the original plan was due . . ." Trustee's Brief, p. 10.

## IV. The Analysis

### A. The Issues

By their modification, the Debtors seek to use the equity in the Property which remains after subtracting the encumbrances and the exemption to satisfy 10% of the filed unsecured claims. As a result, the Debtors would pay less than was provided under the Order and would be entitled to retain for themselves their disposable income for what would have been the duration of the Plan.

The first issue before the Court is whether the Debtors can modify the Plan to reduce the amount which they will pay because filed unsecured claims totaled less than the Debtors projected. The second issue is whether the Debtors can make a lump sum payment to pay off the Plan and retain their income during what was to be the duration of the Plan.

5. The value of the Property is $157,000. The encumbrances are $117,000. The claimed exemption is $16,450. The Debtors need approximately $3,000 to satisfy the Amended Plan.

6. The Order states: "Unsecured: The debtor's (*sic*) Plan provides for *10%* dividend payment to unsecured creditors in the present indicated total of *$87,965.00*." (emphasis in original).

7. The reference to Fed. R. Bankr.P. 3002(c), which sets the deadline for filing proofs of claim, is a reference to the fact that it is the failure on the part of creditors to file timely

### B. Whether the Debtors Can Reduce Their Payments As A Result of Fewer Filed Claims

■ The Order provides that the Debtors will pay $272.00 per month for thirty-six months, for a total of $9,720.00. The Order further states that the Plan provided for a 10% dividend for "the present indicated total of $87,965.64."[6] The Order clarifies that this percentage may increase in accordance with Fed. R. Bankr.P. 3002(c).[7]

As is typical in Chapter 13, the Plan was confirmed before the exact amount of allowed claims had been determined. The total of the filed unsecured claims was $82,720.00, not the projected amount of $87,965.14. In the Amended Plan, the Debtors propose to reduce the total cost of the plan from $9,792.00 to $9,192.00.[8] In other words, the Debtors seek to pay 10% to the actual allowed unsecured creditors rather than pay the monthly amount provided for in the Plan.

■ The Trustee argues that this is an inappropriate attempt on the part of the Debtors to "change [a] pot plan into a percentage plan." The Court of Appeals for the Seventh Circuit explained the difference:

[A] "percentage plan" is a plan which provides a set percentage of his claim each creditor will receive but leaves the exact amount the debtor will pay in flux until all claims are approved. A "pot plan" refers to a plan which provides that the debtor will pay a fixed amount

proofs of claim which often may result in a higher percentage dividend to those creditors who did so file. The phrasing, which is inartistic, is not found in Official Local Form 4, "Order Confirming Chapter 13 Plan".

8. As the Debtors have paid the Trustee $5,984.00 to date, their proposal to pay an additional $3,208.00 would result in a total plan cost of $9,192.00. This figure was calculated by multiplying the total allowed claims by 10% ($82,720.00 × 10% = $8,272.00) and dividing that figure by .90 to account for the Trustee's fee ($8,272.00 ÷ .90 = $9,192.00).

or "pot" of money into the bankruptcy estate but the percentage creditors will receive ultimately depends on the total amount of claims that are approved.

*In re Witkowski,* 16 F.3d 739, 741 (7th Cir.1994).

It appears that a number of courts have treated Chapter 13 plans as "percentage plans." [9] These courts take the view that "[t]he substance of a plan looks to the nature of the debtor's obligation to his creditors, not to the number of payments proposed." *In re Chancellor,* 78 B.R. 529, 530 (Bankr.N.D.Ill.1987). I disagree.

■ The substance of a Chapter 13 plan is not found in the "arbitrary percentage allocations" to unsecured creditors. *See In re Beasley,* 34 B.R. 51, 54 (Bankr. S.D.N.Y.1983). "Nowhere ... does the Code speak in terms of applicable percentages." *Id.* at 53. Rather, the substance of a Chapter 13 plan is found in its fulfillment of Congress' intent that the debtors repay their creditors to the extent of their ability during the Chapter 13 period. *See Arnold v. Weast (In re Arnold),* 869 F.2d 240, 242 (4th Cir.1989); *Beasley,* 34 B.R. at 54; *see generally* Arnold B. Cohen, *Pot Plans Should be Replacing Percentage Plans in Chapter 13,* 4 J. Bankr.L. & Pract. 305 (1995). This Congressional intent is embodied in 11 U.S.C. § 1325(b), which require debtors to devote to their plan their entire projected disposable income over three years if the trustee or a creditor objects to the plan.[10] "A percentage plan, by its very nature, does not seem to constitute a plan by which the debtor will contribute all disposable income to the plan because the debtor may retain a portion of disposable income if fewer than anticipated claims are filed." *Witkowski,* 16 F.3d at 746, n. 11.

A percentage plan may also fail to comply with the requirement found in § 1325(a)(3) that it be proposed in good faith. Any plan which would allocate the windfall created by the failure of certain creditors to file timely proofs of claim to the debtor while unsecured creditors receive less than full payment on their claims does not demonstrate a "fundamental fairness to creditors." *See Witkowski,* 16 F.3d at 746, n. 11.

■ The Order unambiguously provides that the Debtors are obligated to pay $272.00 per month for thirty-six months. This is the principal operational language of the Order. Neither the Order nor the Plan contains any provision for a reduction in monthly payments if the actual amount of unsecured claims is less than projected. Although the Order does indicate that general unsecured creditors will receive a 10% dividend, this simply describes the result upon completion of the Plan assuming that the claims filed equal the claims scheduled. This point is particularly evident given that the Order provides that "[t]he final percentage may be increased up to 100% in accordance with rule 3002(c)."

■ Having construed the Order as creating a "pot plan," I hold that the Debtors are obligated to make payments in accordance with the Plan so long as there remain creditors who have not been paid in full. *See Beasley,* 34 B.R. at 54. "To rule otherwise would impugn the process employed to calculate the debtor's surplus income and the good faith of the debtor in proposing the plan." *Id.* Furthermore, the Trustee is not required to seek a modification in order to increase the percentage dividend to creditors. Rather, as the Debtors continue to abide by their obligations under the Plan, creditors will automatically realize a higher return on their claims. Therefore, I will deny the re-

---

**9.** *See, e.g., In re Guernsey,* 189 B.R. 477, 479 (Bankr.D.Minn.1995); *In re Rivera,* 177 B.R. 332, 333–34 (Bankr.C.D.Cal.1995); *In re Phelps,* 149 B.R. 534, 538 (Bankr.N.D.Ill. 1993); *Casper v. McCullough (In re Casper),* 154 B.R. 243, 247 (N.D.Ill.1993); *In re Carr,* 159 B.R. 538 (D.Neb.1993); *In re Chancellor,* 78 B.R. 529, 531 (Bankr.N.D.Ill.1987).

**10.** See footnote 12, *infra.*

quested modification based upon the inappropriate reduction of payments.

### C. The Applicability of 11 U.S.C. § 1325(b)(1)(A)

Because the Debtors easily can resolve the issue presented above by amending the Amended Plan to adjust their payments, I will continue and address the remaining issues presented. Assuming that they address the foregoing, the Debtors propose to use non-exempt equity in the Property to satisfy their remaining obligations under the Plan and retain their disposable income for what would have been the remainder of the term of the Plan. Section 1329 contemplates that a Debtor can reduce the amount and time for payments under a plan.[11] The Trustee objects on the grounds that the Amended Plan does not meet the requirements set forth in § 1325(b)(1)(B).[12] The Debtor and the

**11.** 11 U.S.C. § 1329 provides as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period but the court may not approve a period that expires after five years after such time.

**12.** 11 U.S.C. § 1325 provides in full as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

(b) (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

NCLC contend that because § 1329(b) does not require compliance with § 1325(b) for modification, the Trustee cannot object to the Amended Plan on that ground.

■ There is a split of authority as to whether § 1325(b) applies to post-confirmation modification. One court explained the two views as follows:

> Arguments for exclusion of the test's applicability to postconfirmation plan modifications are made largely based upon its facial omission from Section 1329(b)(1) ... Additional argument is made that Section 1329(b)(1) is rendered mostly redundant if "all of Chapter 13 becomes applicable at postconfirmation modification by reference to [Section] 1329(b)(1)" Lundin, Keith M., *Chapter 13 Bankruptcy*, vol. 2 § 6.45 at 6–134 to 135.
>
> Conversely, arguments for inclusion of the test as a requirement do so under Section 1325(a) which provides in pertinent part, *"Except as provided in subsection (b),* the court shall confirm a plan if—"(1) *the plan complies with the provisions of this chapter* and with the other applicable provisions of this title; ... Here, proponents argue that Section 1325(b) is implicated by either section 1325(a)'s preface, "[e]xcept as provided in subsection (b)" or by Section 1325(a)(1)'s blanket application of the chapter provisions, "the plan complies with the provisions of this chapter."

*Forbes v. Forbes (In re Forbes)*, 215 B.R. 183 (8th Cir. BAP 1997).

While recognizing that the omission of § 1325(b) from § 1329(b)(1) may have been an oversight on the part of Congress, the *Forbes* court declined to require the application of the "best efforts test" to post-confirmation modification because the subsection was omitted from § 1329(b). 215 B.R. at 191. In further support, the *Forbes* court looked to the Lundin treatise which points out that application of the

test to post-confirmation modification is also suspect because of the paradox created when the original plan is two years old because the disposable income test would require payments for three years under the modified plan and § 1329(c) requires that a court may not approve a modified plan that calls for payments more than five years after the first payment was due under the original confirmed plan. *Id.* at 192. (citing 2 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 6.45 (2d ed.1994)).

Judge Lundin, in his treatise, however, comes to the following conclusion:

> Though there is no illuminating legislative history, the language of §§ 1329 and 1325 favors the interpretation that the disposable income test applies at confirmation of a modified plan.
>
> Policy arguments favor application of the disposable income test at confirmation of a modified plan. . . . Applying the projected disposable income test at confirmation of a modified plan would go a long way to eliminating the "danger" that a Chapter 13 debtor would experience a significant improvement in financial condition after confirmation of the original plan and not share that good fortune with prepetition creditors.
>
> The logic of the projected disposable income test does not support its application at modification of a confirmed plan ... If the projected disposable income test is applied again and again, each time the trustee or the holder of an allowed unsecured claim moves for modification of a plan after confirmation, then the concept of "projected" is meaningless ...
>
> This conundrum only serves to emphasize that the interaction of the disposable income test in § 1325(b) and the modification of plans under § 1329 was not well conceived. The 1984 amendments enabling the Chapter 13 trustee and allowed unsecured claim holders to seek postconfirmation modification have

---

(c) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

exacerbated these problems of statutory construction. It is unlikely that the drafters of § 1329(b) intended to preclude modification of all plans that have survived two years after the first payment was due under the original plan and in which unsecured claim holders cannot be paid in full in less than three years.

2 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 6.46 (2nd ed.1994).

A third result has emerged in recent years. Some courts have held that § 1325(b) applies but only when the application would prevent an abuse of the Bankruptcy Code. *See In re McCray*, 172 B.R. 154, 158 (Bankr.S.D.Ga.1994)(holding res judicata barred revisiting disposable income test except in extraordinary circumstances). *In re Wilson*, 157 B.R. 389, 390–92 (Bankr.S.D.Ohio 1993)(same).

I find that the arguments excluding the application of the subsection are not as strong as the ones to include it. I conclude that the Trustee may object to the proposed modification on the basis of § 1325(b).[13]

Having so concluded, I now turn to the merits of the Trustee's objection. The Trustee argues that the Debtors must apply their projected disposable income to the Plan for three years instead of making a lump sum payment from non-estate property. The lump sum payment is the approximate equivalent of what the Debtors would pay from their disposable income, the only difference being that creditors will be paid immediately instead of over time. *In re Easley*, 205 B.R. 334, 335 (Bankr.M.D.Fla.1996)(permitting debtor to satisfy remainder of plan with loan from parents as "[a]ll sides benefit"). It is almost a distinction without a difference. That is, the Debtors will pay to the Trustee their "projected disposable income to be received in the three-year period beginning on the date that the first payment is

due under the plan ..." To make a lump sum payment is being true to the statute.

The problem, however, is the language of the statute. 11 U.S.C. § 1325(b)(1) states that the court may not confirm a plan over an objection unless the plan is a 100% plan or it provides that all projected disposable income to be received for three years will be applied to the plan. *In re Guentert*, 206 B.R. 958 (Bankr.W.D.Mo.1997)(holding that nothing in the Bankruptcy Code authorized the court to permit lump sum payment), *In re Powers*, 140 B.R. 476 (Bkrtcy.N.D.Ill.1992)(holding that statute does not permit nonconsensual modification to provide for lump sum payment ).

■ I find nothing in the statute which prohibits prepayment where no prepayment discount is sought. A lump sum payment in the aggregate amount of the Debtors' disposable income during the three years of the Plan is simply an anticipatory satisfaction of the obligations under the Plan and is permissible.

But before I can rule on the propriety of the proffered lump sum payment in this case, I must first determine whether the Debtors have satisfied § 1325(b) by paying creditors the equivalent of the Debtors' disposable income during the life of the Plan. That is, MLBR, Appendix 1, 13–12 requires that a debtor must file updated Schedules I and J when filing a motion to amend a plan post-confirmation. A purpose of this requirement is to enable the Court to determine whether a proposed modified plan meets the "disposable income test" based upon the debtor's financial condition at the time of the requested modification.

■ If the Debtors' amended Schedules I and J reflect an increase in their disposable income, as they represented in their refinancing motion, that increase may

13. In so holding, however, I am mindful that modification is permissive and not mandatory.

have resulted in more disposable income. If the Debtors' disposable income is greater after the refinancing, the lump sum amount might have to be higher to account for the greater disposable income during the remainder of the Plan. Because the Debtors did not file updated Schedules, I have insufficient information to rule on the propriety of their proffered lump sum payment and the motion to modify must be denied on that basis as well.

Unfortunately and because the Debtors can easily cure the infirmities listed above, the foregoing conclusion does not complete the necessary analysis. I must determine if the Amended Plan meets the requirements of § 1325(a), as required by § 1329. *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183 (8th Cir. BAP 1997)(holding post confirmation plan modification must satisfy "best interest of creditor test").

■ The only requirement of § 1325(a) upon which I cannot make a finding on in this case is subsection (4), which requires that the unsecured creditors receive under a Chapter 13 plan not less than what they would obtain under a Chapter 7 liquidation.

Many courts have struggled with whether the language in the statute, "as of the effective date of the plan" refers to the effective date of the original plan or the effective date of the plan as modified. *Id.* at 189. The court in *Forbes* stated that the language in the statute must refer to the effective date of the plan as originally confirmed in part because of certain questions of the tests application which Judge Lundin raised in his treatise. *Id.* (citing 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 6.44 (2nd ed.1994)). Notwithstanding those questions, however, Judge Lundin stated that the "better interpretation is that 'the effective date of the plan' is the effective date of the plan as modified. This interpretation gives effect to § 1329(b)(2) and recognizes that the passage of time between confirmation of the original plan and confirmation of a modified plan does change the facts and circumstances of a Chapter 13 case." *Id.* at 6-132.

I agree with the last quoted remarks of Judge Lundin. Because the Amended Plan did not include a liquidation analysis, I am unable to determine whether the Debtors have met the requirements of § 1325(a)(4). As such, the Debtors have not met their burden with respect to modification and the motion must be denied.

## V. CONCLUSION

For the reasons stated, the Trustee's objection to the Debtors' motion to modify the Plan is sustained and the motion is denied. Debtors may file a further amended plan, which contains information consistent with this decision, within three weeks, to be accompanied by revised Schedules I and J reflecting the economic situation of the Debtors as a result of the refinancing and any other changes which have occurred since the filing of the original schedules.