**In re John William DELMONTE and Lisa Jo Delmonte, Debtors**

**Bankruptcy No. 97–42983S.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

July 8, 1999.

Merv B. Waage, Waage & Waage, L.L.P., Denton, TX, for Debtor.

Jay L. Gueck, Olson Gibbons Nicoud, Birne, Sussman & Gueck, LLP, Dallas, TX, for San–1, L.L.C.

## *OPINION*

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Objection of San–1, L.L.C. to the Trustee's Final Accounting and Discharge of the Debtors. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The debtors, John William and Lisa Jo Delmonte ("Debtors"), initiated this case by the filing of a voluntary petition under Chapter 13 of Title 11 on September 12, 1997. January 21, 1998 was set as the bar date for filing claims in the case. San–1, L.L.C. filed a secured proof of claim in the amount of $41,129.84 based upon a floor plan agreement and guarantee relating to the financing of various automobiles in connection with the debtor's business. The Debtors filed a Chapter 13 Plan of Reorganization on September 23, 1997 which was confirmed by this Court by an order entered on March 10, 1998, over the objection of San–1 (the "Plan"). Under the terms of the Plan, the debtors are required to "pay the sum of $325.00 per month for six (6) months, then $595.00 per month for thirty (30) months, and a balloon payment in the amount of $11,000.00 for a total of $30,800.00" to the Standing Chapter 13 Trustee "until all allowed claims provided for under the Plan have been paid in accordance with the terms of the Plan, of this Order, or until further order of this Court". The Plan contains another provision pertinent to this inquiry. Section 8 of the Order Confirming The Plan Of John William Delmonte and Lisa Jo Delmonte and Related Orders ("Confirmation Order") terminates the automatic stay with respect to and provides for the repossession and foreclosure of San–1's collateral. It states that "The unsecured portion of the debt, if any, shall be treated as any

other unsecured creditor." [1] Accordingly, following entry of the Confirmation Order, San–1 repossessed and sold its collateral. Although the Court has not been advised as to the exact date of the sale, it believes that San–1 did not procrastinate, but promptly exercised its rights under the Plan, foreclosing upon and selling the collateral, because on August 6, 1998 it filed its First Amended Proof of Claim reducing the amount of the claim to $26,975.61 and changing the classification of the claim from secured to unsecured. *Cf. In re Bradshaw,* 65 B.R. 556 (Bkrtcy.M.D.N.C. 1986) [secured creditor which received notice filed proof of claim 18 months after Ch. 13 petition filed. The court preserved the creditor's lien but held that creditor lost its opportunity to file for the deficiency after sale of the collateral.] Neither the Trustee nor the Debtors have filed objections to the Amended Claim; nor has modification of the Plan been sought. No evidence has been presented to this Court which would suggest that San–1 did not exercise its rights as promptly as possible while remaining within the notice provisions of applicable State and Federal law with respect to its repossession and sale.

The dispute before this Court arises from the filing of the Trustee's Final Report and Accounting and Notice of Plan Completion and Order Setting Discharge ("Notice") and San–1's Objection to Final Accounting and Objection To Discharge. The Final Report And Accounting ("Plaintiff's Exhibit # 3") reflects that the case was concluded on July 31, 1998 and states that the Debtor is entitled to a discharge. The matter came on for consideration pursuant to regular setting when the Plaintiff placed the Notice, Order for Meeting of Creditors, Final Report and Account, secured Proof of Claim, unsecured Amended Proof of Claim and the Confirmation Or-

der into evidence. The parties then relied on oral argument with no further evidence. No other party, including the Debtors, appeared or participated in the hearing.

## DISCUSSION

■ The basis of the Trustee's position is that the Debtors paid all payments due on allowed claims under the Plan, as filed, in May, 1998, two months following confirmation and only eight months into the thirty-six month plan term. As a result of such payment, the Final Report and Account asserts that the Debtors are entitled to their discharge. San–1 seeks to have the Plan implemented as confirmed. San–1 believes that the Debtors should be required to make the thirty six months of payments to the Trustee contemplated under the Confirmation Order, including payment of its unsecured Amended Claim which was filed before the term of the plan ended. The first issue before the Court is the proper effect and validity of the Amended Proof of Claim given the Debtor's early completion of payment of the amounts due under the Plan. Neither the Debtors nor the Trustee have filed a written objection to the original secured proof of claim or the unsecured amended proof of claim. Pursuant to 11 U.S.C. § 502(a) a claim is deemed allowed until objected to if timely filed. *In re Simmons,* 765 F.2d 547, 551–553 (5th Cir.1985).

■ The first question to be answered is whether the claim is actually an "amended" claim as it is denominated. To be an amended claim which relates back to the filing of the original claim, the amended claim must bear a relationship to the original claim and must simply be a correction or supplementation of that claim supported by the same operative facts which gave rise to the original claim. *In re*

1. The Debtor's First Amended Chapter 13 Plan filed on Feb. 10, 1998, provided for unsecured claims as follows: "Unsecured claims will be paid by the Trustee after payment of the aforementioned categories, to creditors who have duly and timely filed and proved their claim, with the same having been allowed by the Court, with such payments and dividends to be paid in lieu of the debt and in satisfaction of the debts to such creditors."

*Friesenhahn,* 169 B.R. 615, 618 (Bkrtcy. W.D.Tex.1994)[2] *In re Friesenhahn,* 169 B.R. 615, 618 (Bkrtcy.W.D.Tex.1994). In this instance we are dealing with a deficiency claim. This Court finds that the Amended Proof of Claim satisfies the requirements to be considered an amendment of the original claim. It relates to and arises out of the same transaction as the original claim. As such, its date of filing relates back to the date of the filing of the original claim and, accordingly, it must be deemed to be timely filed. Regardless, the Fifth Circuit and others have found that a court's inherent equitable powers may intervene in the appropriate case to authorize an "amendment." See *United States v. Kolstad,* 928 F.2d 171, 175 (5th Cir.1991). This Court is of the opinion that San-1 must be permitted to amend its claim in order for the terms of the Plan to be given their full force and effect. Confirmation of the Chapter 13 Plan binds the debtors and each creditor to the terms of the plan. 11 U.S.C.A. § 1327(a).

This case can be distinguished from *In re Rincon,* 133 B.R. 594 (Bkrtcy.N.D.Tex. 1991) in which a deficiency claim was not allowed. In *In re Rincon,* the Chapter 13 debtors objected to the post-confirmation, amended claim of a secured creditor. The modified plan provided for the surrender of its collateral, a vehicle "for value". It made no provision for a deficiency claim, as had the prior plan. The creditor filed no objection to the modification. The Bankruptcy Court for the Northern District of Texas held that the secured creditor, who received notice of but had not objected to the modified plan, was bound by the terms of the confirmed plan and not entitled to a deficiency claim. In the case before this Court, the confirmed plan specifically provides for the course of action undertaken by the creditor, i.e. to permit the lifting of the stay as to the secured creditor's collateral, its sale, and the treatment of the deficiency in the manner provided for all other unsecured claims. To disallow the Amended Claim would strip San-1 of its deficiency claim and render the provision in the Plan granting the unsecured, deficiency claim of no force and effect. Hence, to disallow the Amended Claim would be to impermissibly modify the confirmed Plan. As confirmed, the Plan did not contemplate the surrender of the collateral in full satisfaction of the debt, nor did it contemplate that upon foreclosure, any deficiency claim would be relinquished. It specifically provided that the deficiency claim would be treated "as any other unsecured creditor".

The second question before the Court is a determination of what constitutes "completion by the debtor of all payments under the plan." 11 U.S.C. § 1328(a) requires: "As soon as practicable after completion by the debtor of all payments under the plan..., the court shall grant the debtor a discharge of all debts provided

**2.** Where a creditor files a claim within the time prescribed by the Federal Rules of Bankruptcy Procedure, see FED.R.BANKR.P. 3002(c), 3003 & 3004, or by court order, that claim may be amended. Amended claims generally relate back to the original filing they amend, timely or tardy as that may be. Like pleadings filed in other civil arenas, leave to amend is granted liberally with two provisos. First, the amended claim must be of the same basic genre as, or bear a sufficient relationship to, the claim or claims included in the original filing. In that regard an amendment may cure a defect in the claim as originally filed, describe the claim with greater particularity, or plead a new theory of recovery based upon facts set forth in the original claim. In effect, the inquiry parallels the inquiry made under Rule 15(c) of the Federal Rules of Civil Procedure, applicable herein through Rule 7015 and Rule 9014 of the Federal Rules of Bankruptcy Procedure. See *In re Unroe,* 937 F.2d 346 (7th Cir.1991); *In re Milan Steel Fabricators, Inc.,* 113 B.R. at 368. Rule 15(c) provides that an amendment will relate back to the initial filing if it arises out of the same "conduct, transaction, or occurrence." This test looks to whether the original claim was sufficient to place others on notice of the existence of the claim made in the amendment. *In re Milan Steel Fabricators, Inc.,* 113 B.R. at 368 (citing 6 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE, ¶ 1472 at 513 (2d ed.1990)). *In re Friesenhahn,* 169 B.R. 615, 618 (Bkrtcy. W.D.Tex.1994).

for by the plan or disallowed under section 502 of this title...". The Trustee believes that the Amended Claim should not be allowed to be paid under the Plan because it was untimely. The Trustee reasons that the Amended Claim was untimely because it was filed after "completion by the debtor of all payments under the plan." The Trustee further argues that as a result of the Debtors having completed all payments under the Plan, the Debtors were "entitled" to a discharge. The argument is not without merit and could prevail under different circumstances, notwithstanding the significant distinction between entitlement and eligibility.

Contrary to the Trustee's position, a court may permit an amendment of a proof of claim after completion of payments under a debtor's plan and permit payment of such claim, in particular when an estate remains open, other allowed claims and unsecured claims have been paid in full, there are sufficient funds and no undue prejudice results. See *In re Newcomb*, 60 B.R. 520 (Bkrtcy. W.D.Va.1986). However, the Court is of the opinion that, in the case before the Court, the debtors have not completed their payments under the Plan. A Chapter 13 debtor has a two-fold obligation under a confirmed plan. It "must make the plan payments required of it and those payments must be sufficient to do what the plan proposes." *Matter of Escobedo*, 169 B.R. 178, 179 (Bankr.N.D.Ind.1993), aff'd. *Matter of Escobedo*, 28 F.3d 34 (7th Cir. 1994). *In re McIntosh*, 1996 WL 391560 (Bkrtcy.N.D.Ind.1996). Failure to do so may be cause for dismissal.

The facts in *In re Rivera*, 177 B.R. 332 (Bkrtcy.C.D.Ca.1995) are comparable to those before this Court because they show that compliance on but one of the two levels is not satisfactory to fulfill a debtor's obligation under the Bankruptcy Code. In *Rivera*, the Chapter 13 debtor's confirmed plan provided for a 65% return to unsecured creditors. Even though the debtors made the specified number of monthly payments required under the confirmed plan, because allowed claims exceeded the scheduled claims, such payments were insufficient to satisfy the 65% dividend provided for under the plan. The Trustee moved for a dismissal and the Court granted the motion holding that the Debtors' payment of less than the percentage called for in the plan preclude[d] qualification for discharge. *Ibid.* at 333.

The *Rivera* Court relied upon the rationale provided by the Court in *In re Carr*, 159 B.R. 538 (D.Neb.1993) in which the debtor was denied a discharge even though the debtor completed 36 payments as provided under the plan, but such payments were inadequate to provide for 100% of the priority claims. The *Carr* Court found that the plan had not been satisfied based on its reading of the terms of the plan which provided for full payment of all priority claims. The *Carr* Court addressed the problem facing the courts when there is an ambiguity in the plan such that the percentage and duration of payments set out in the order confirming the plan are inconsistent. Citing to *In re Phelps*, 149 B.R. 534, 537 (Bkrtcy.N.D.Ill.1993), in which the Trustee sought to modify the debtor's plan after completion of term of monthly payments, the Court reasoned that "the substance of a plan looks to the nature of a debtor's obligation to the debtor's creditors, not to the number of payments proposed". The *Carr* Court denied the debtor his discharge without prejudice, a ruling that was upheld on appeal. Likewise, in *Matter of Casper*, 154 B.R. 243 (N.D.Ill.1993), the Court held that bankruptcy courts should look to the substance of a plan and nature of a debtor's obligation to allowable creditors to discern when payments under a Chapter 13 plan are completed; number of payments or duration of a Chapter 13 plan is not controlling in determining when payments under the plan are completed.

A recent ruling reflects the philosophy that neither the number of pay-

ments nor percentage of distribution alone should be dispositive of the completion of payments issue. Whether completion of payments has occurred is a question that frequently arises in the context of modification under 11 U.S.C. § 1329.[3] In *In re Martin*, 232 B.R. 29 (Bkrtcy.D.Mass.1999) the Court denied the debtors' request to modify their confirmed plan. The debtors sought to make a lump sum payment in full satisfaction of their obligations under the plan. The Court ruled that a lump sum payment to satisfy the remainder of the plan is appropriate *so long as it includes any increased disposable income during the remainder of the plan.* [Emphasis added.]. The Court held that the debtors were obligated to make payments to the extent of their ability so long as there remained creditors who had not been paid in full. It said:

> The substance of a Chapter 13 plan is not found in the "arbitrary percentage allocations" to unsecured creditors. See *In re Beasley*, 34 B.R. 51, 54 (Bankr. S.D.N.Y.1983). "Nowhere ... does the Code speak in terms of applicable percentages." Id. at 53. Rather, the substance of a Chapter 13 plan is found in its fulfillment of Congress' intent that the debtors repay their creditors to the extent of their ability during the Chapter 13 period. See *Arnold v. Weast* (In re Arnold), 869 F.2d 240, 242 (4th Cir. 1989); Beasley, 34 B.R. at 54.

*In re Martin*, 232 B.R. 29, 34 (Bkrtcy. D.Mass.1999).

 This Court does not believe that the Debtors have repaid their creditors to the extent of their ability during the Chapter 13 period. All of the evidence before this Court indicates that John William Delmonte and Lisa Jo Delmonte have not done so. No evidence has been provided to this Court identifying the source of the funds used to prepay the Debtors' Plan. Under 11 U.S.C. § 1325(b), the Court may not approve a plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."[4] 11 U.S.C.A. § 1325(b)(1)(B). In other words, a debtor's plan must submit all disposable income to the bankruptcy estate for at least three years. Lacking other evidence, the only reasonable conclusion that this Court can make as to the source of the prepayment funds tendered a mere two months after confirmation and eight months into the plan is that the funds derive from working income of the debtors' business operations, i.e. their disposable income. This Court is unwilling to read the Bankruptcy Code disjunctively, without respect for its object and policy. *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986) and *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222, 106 S.Ct. 2485, 2489, 91 L.Ed.2d 174 (1986) [additional cites omitted.][5] Therefore, the Debtors' good faith in proposing and confirming the Plan dedicating all of their disposable income to the Trustee for the payment to creditors is called into question, as is the Debtors' eligibility to receive a discharge under the Bankruptcy

---

**3.** The pertinent part of 11 U.S.C. § 1329(a) states: "At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request...".

**4.** This Court agrees that "A percentage plan, by its very nature, does not seem to constitute a plan by which the debtor will contribute all disposable income to the plan because the debtor may retain a portion of disposable income if fewer than anticipated claims are

filed." *In re Martin, Ibid at 34,* citing to *Witkowski,* 16 F.3d 739, 746, n. 11 (7th Cir. 1994).

**5.** This is a fact based conclusion. This Court agrees that given sufficient indicia of good faith, alternative rulings have been appropriate., i.e. prepayment of a plan using funds derived from the sale of exempt property or taking a second job or working overtime. See, e.g., *Matter of Casper, Supra.* at 245.

Code provisions. This Court agrees with the Fourth Circuit Court which opined in *In re Arnold*, that "Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors." *In re Arnold*, 869 F.2d 240, 242 (4th Cir.1989). Accordingly, this Court holds that the Debtors have failed to demonstrate that they have paid their disposable income to their creditors for a thirty-six month period. This is a fatal flaw and they have not completed their plan.

## CONCLUSION

For the foregoing reasons, the Trustee's Final Report and Account is not approved by this Court, San–1's Amended Claim is allowed as an unsecured claim to be treated and paid as all other unsecured creditors and the Debtors' discharge is denied without prejudice.