**In re Esther H. BACON, Debtor.**

**No. 97–22742PM.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

March 6, 2002.

Brett Weiss, Olney, MD, Edward C. Christman, Jr., Rodgers and Dickerson, Lutherville, MD, for debtor.

Marc E. Albert, Morrison and Hecker, Washington, DC, Deborah K. Curran, Laurel, MD, John Robertson Glassburn, III, Niles, Barton, Baltimore, MD, William M. Savage, Fairfax, VA, for creditor.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

The matter before the court is the application of the debtor for a refund of $1,432.66 from the chapter 13 trustee. The issue presented is whether the debtor is entitled to the return of funds returned to the trustee, and re-distributed by him, after entry of discharge in the debtor's bankruptcy case.

On October 21, 1998, this court entered an Order confirming the debtor's chapter 13 plan of reorganization (the "Plan"). The Plan required payment of $400 per month for 60 months, or a base funding of $24,000. The Plan provided for the trustee to disburse the payments as follows: (1) to priority claims under 11 U.S.C. § 507; (2) to secured creditors whose claims are duly proved and allowed; and (3) to unsecured creditors pro rata, whose claims are filed.[1] On June 28, 2001, the trustee filed a line advising the court that the debtor completed her plan payments and was entitled to a discharge under § 1328. Thereupon, the court entered an order discharging debtor after completion of her chapter 13 Plan (the "Discharge").

The trustee received $24,800 on debtor's account from May 1998 through July 2001, this was $800 more than the gross funding of $24,000 required under the confirmed plan. The trustee turned over this surplus to the debtor by two checks of $400, one issued June 27, 2001 and the other issued August 31, 2001.

While the debtor's Plan was pending, she fell behind in her post-petition payments to Temple–Inland Mortgage Corporation, the holder of the senior lien secured by her home. A motion for relief from stay was filed, and upon her failure to respond, the stay of § 362(a) was terminated by order entered April 18, 2001. Faced with a threat of foreclosure, the debtor arranged refinancing. On May 29, 2001, the trustee received $9,600 from the settlement agent, as debtor's lawyer had been advised by letter dated May 3, 2001, that the trustee consented to the refinancing provided that the settlement attorney forward to him the $9,600 required to complete payments under the Plan. The last check that the trustee issued to Temple–Inland was dated April 30, 2001, and the last check to the Money Store was dated May 31, 2001.

The two secured creditors were paid off from the proceeds of the refinancing. Temple–Inland did not negotiate the April 30 payment from the trustee, and the trustee stopped payment on the transfer September 28, 2001. The Money Store negotiated the payment, but held it in its suspense account, returning the funds to the trustee by check dated November 8, 2001. Therefore, after the entry of debtor's discharge the trustee held $1,432.66 in his account, so that only $22,567.34 of the gross funding of $24,000 had then been distributed under her Plan. The trustee, thereupon as required by the Plan, distributed the remaining funds pro rata among unsecured creditors without priority filing proofs of claim.

The debtor sent a letter to this court on December 4, 2001, alleging that the funds which the trustee had in his possession were actually due and owing to the debtor. Accordingly, the court set a hearing on

---

1. Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

this motion and heard arguments on January 3, 2002. At that time, the court took the matter under advisement, and permitted both parties to submit memoranda in further support of their arguments. The trustee submitted a memorandum in opposition to debtor's request for refund on January 11, 2002. The trustee's position is that the debtor, under her confirmed Plan, was required to pay a total of $24,000 to her creditors. The debtor only completed her obligation under the Plan when $24,000 had been received and disbursed. However, the fact that $1,432.66 of this $24,000 has been returned to the trustee, does not entitle the debtor to receipt of that money. If any creditor rejects funds, the trustee avers that these funds must then be distributed to the unsecured creditors, pro rata, as the Plan requires. Finally, the trustee argues that this is exactly what was done in this case. On November 30, 2001, the trustee applied the $1,432.66 that remained in the estate to Moreequity, Toyota Motor Creditor and Washington Gas, pro rata, as well as disbursing the statutory trustee fee.

The debtor, through counsel, also submitted a memorandum in support of her argument that she was in fact entitled to the funds which were returned to the trustee. Debtor explained why the two secured creditors returned the payments, namely that the claims owned by Temple–Inland and The Money Store were paid and released via refinance proceeds.

The debtor avers that the Plan did not provide for these funds to be distributed to the unsecured creditors. The debtor also maintains that the funds constitute unclaimed funds as provided in § 347. However, the debtor claims that there is no guidance in the Code or the rules regarding what happens with unclaimed funds when both the debtor and the trustee are claiming entitlement to them. Alternative-

ly, the debtor asked the court to treat debtor's motion as an application for release of unclaimed funds.

■ The issue before this court is twofold. Absent a modification of Debtor's Plan by the court, could the trustee do anything other than to disburse the money refunded from Temple–Inland and The Money Store to the unsecured creditors without priority? Secondly, does the granting of debtor's Discharge by the bankruptcy court have any effect upon the trustee's duty to disburse the funds? This court will address each of these issues in turn.

Here, the debtor paid Temple–Inland and The Money Store refinancing proceeds outside of the Plan. Section 1329(a)(3) provides that a plan may be modified after confirmation at the request of the debtor, to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." Even though § 1329 provided the debtor a vehicle to modify her Plan as a result of the payments she made to Temple–Inland and The Money Store outside of the Plan, the debtor failed to do so.

Moreover, if the debtor did not intend for the trustee to be bound by her Plan, after payment to Temple–Inland and The Money Store had been made outside of her Plan, then the debtor should have sought a modification. For as the court found in *Fleet Real Estate Funding Corp. v. Fewell (In re Fewell)*, 164 B.R. 153, 156 (Bankr. D.Colo.1993), "the Trustee must distribute pursuant to the Plan proposed by the Debtors and confirmed by the Court. Provisions of a confirmed plan do, indeed, bind the debtor, creditors, and payment arrangements undertaken by and conducted through the Office of the Trustee." (citations omitted). When the trustee has

funds returned from secured creditors, the trustee is obligated to disburse those funds in accordance with the confirmed Plan. If the debtor did not want these funds to be distributed according to the Plan, it was her responsibility, pursuant to § 1329, to modify her Plan. When, she failed to do so, the trustee acted precisely as he was required to under the debtor's confirmed Plan.

Furthermore, the debtor was told by the trustee how he intended to apply these refunds. As the exhibits show, the trustee corresponded with both the debtor and the secured creditors, and informed them that if the creditors were not entitled or did not wish to receive the funds, then the money would be paid to other creditors under the Plan. The trustee put the debtor on notice that if funds were in fact returned to him, that such funds would be distributed to the remaining creditors in accordance with the debtor's Plan.

However, after failing to respond to this correspondence, and modify her plan accordingly, the debtor now contends that § 347 controls the issue of who is entitled to the funds which were returned to the trustee from Temple–Inland and The Money Store. Section 347(a) provides "[n]inety days after the final distribution ... the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28 [28 USC §§ 2041 et seq.]."

This court has previously held that when a secured creditor returns funds to the trustee, "[t]he monies in the Chapter 13 Trustee's hands are not 'unclaimed property' pursuant to Section 347 and should not be paid into the Registry of Court." *In re Pegues*, 266 B.R. 328, 332 (Bankr.D.Md. 2001) ("This provision only applies to account balances resulting from trustee checks which remain unpaid; therefore,

Section 347 is inapposite to the money held by the Chapter 13 Trustee in the instant case which was returned to the Chapter 13 Trustee by Wells Fargo.") *Ibid.* Accordingly, the $752.86 which was returned to the trustee by The Home Money Store is not subject to § 347.

Furthermore, whether or not the trustee should have paid the funds remaining from the canceled check of Temple–Inland Mortgage into the court pursuant to § 347 is immaterial. As this court has previously held, "a debtor has no right to plan payments after confirmation of a plan, except where excess funds remain after all distributions authorized by the plan have been made in full." *In re Pegues*, 266 B.R. 328, 336 (Bankr.D.Md.2001) (citations omitted). The $1,432.66 figure represents a portion of the $24,000 required to be paid by the debtor under the Plan. The Plan provided that after payment to secured creditors, the unsecured creditors would be paid pro rata. Therefore, pursuant to the Plan, and absent modification, the unsecured creditors were entitled to a pro rata share of any funds remaining from the $24,000.

■ The entry of a discharge in this case does not alter these facts. Section 524 governs the effect of discharge. Section 524(a)(2) provides that "[a] discharge in a case under this title ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Accordingly, none of the creditors subject to the debtor's discharge may proceed against the debtor personally.

However, § 524(e) provides, "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does

not affect the liability of any other entity on, or the property of any other entity for, such debt." Therefore, although the creditors could not proceed against the debtor personally for this debt, that does not necessitate that they do not have any rights in the money that was returned to the trustee.

Moreover, numerous courts have found that subsequent to entry of discharge, creditors still have a claim against other entities, such as the bankruptcy estate, even though the individual debtor has been discharged and is no longer personally liable on the debt. *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (C.A.5 1993); *First Fidelity Bank v. McAteer*, 985 F.2d 114 (C.A.3 1993); *In re Mosby*, 244 B.R. 79 (Bankr.E.D.Va.2000) ("In particular, nothing in the Code suggests that a discharge eliminates the creditor's claim against the bankruptcy estate.") (*citing, Board of Commissioners of Shawnee County, Kansas v. Hurley*, 169 F. 92 (C.A.8 1909); *In re Groenleer–Vance Furniture Co.*, 23 F.Supp. 713 (W.D.Mich. 1938)); *In re Jason Pharmaceuticals, Inc.*, 224 B.R. 315 (Bankr.D.Md.1998); *Cooper v. Walker (In re Walker)*, 151 B.R. 1006, 1008 (Bankr.E.D.Ark.1993) ("Of course, while the discharge extinguishes *personal liability* of the debtor, the discharge does not in fact extinguish the debts themselves. Discharge of the debtor does not eradicate *in rem* liability which may exist against assets, nor liability of third persons . . .") (citations omitted).

Because there were certain unsecured creditors filing claims who had not been paid in full, those creditors were entitled to the pro rata distribution from the $1,432.66 returned to the trustee.

Accordingly, the court finds that the trustee was required to disburse the funds which were returned to him according to the Plan, absent timely modification of the Plan by the Debtor. The fact of the Discharge is immaterial. An Order will be entered consistent with this ruling.