**In re Alfred and Gloria SMITH, Debtors.**

**No. 01–13726–JNF.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 6, 2005.

---

Richard N. Gottlieb, Law Offices of Richard N. Gottlieb, Boston, MA, for Debtors.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the "Debtors' Motion to Reconsider the Honorable Court's Order of May 19th, 2005." The Debtors, Alfred and Gloria Smith (the "Debtors"), seek reconsideration on the ground that they and their legal counsel "received no adequate notice that they were expected to appear" at a hearing on the "Chapter 13 Trustee's Objection to Amended Proof of Claim Filed by Americredit Pursuant to this Court's Order and Memorandum Entered on March 4, 2005."

At the May 19, 2005 hearing, this Court entered an order sustaining the Chapter 13 Trustee's Objection to an amended proof of claim filed by Americredit Finance ("Americredit"). Through her Objection, the Trustee had sought an order requiring Americredit to refund the sum of $6,260.61 which represented an overpayment of its amended proof of claim, as well as instructions with respect to the application of the disgorged funds. In addition to sustaining the Trustee's Objection to Americredit's amended proof of claim, the Court, at the May 19, 2005 hearing, authorized and directed the Trustee to distribute funds received from Americredit to unsecured creditors pursuant to the Debtors' confirmed Chapter 13 plan and to file an amended final account as soon as practicable.

As grounds for reconsideration, the Debtors argued that because "[n]either the Trustee nor the Court sent notice to the

Debtors' counsel[1] ... Debtors' counsel reasonably believed that it would be inappropriate to appear as the Debtors were not parties to the Trustee's claim of objection." As further grounds for reconsideration, the Debtors stated that "[n]o where in any of the Court correspondence or filings is it stated that the May 19, 2005 hearing was to adjudicate the issue of the residual funds," which the Debtors claimed as proceeds of exempt property, namely their homestead equity. They added that they are equitably subrogated to the rights of Americredit in the funds received by the Trustee and that

> [t]o the extent that the Trustee asserts the right to unilaterally increase the dividend over and above the percentage amount listed in the Debtors' First Amended Plan based upon the form of order set forth in the Massachusetts Local Bankruptcy Rules, such a provision is contrary to the provisions of 11 U.S.C. § 1321 and 1329(a) which require notice and a hearing prior to any alteration in the amounts paid to creditors under a Chapter 13 Plan, as a matter of Due Process. Consequently, any provision of the Massachusetts Local Bankruptcy Rules and form of order required thereby mandating an "automatic" increase in the percentage dividend to unsecured creditors is inconsistent with substantive law and is not enforceable, pursuant to 28 U.S.C. § 2075.

In their Motion to Reconsider, the Debtors specifically requested that this Court direct the Trustee to return the funds received from Americredit to the Debtors.[2]

The issue presented by the Debtors' Motion to Reconsider is whether the Debtors have stated grounds for reconsideration of the Court's May 19, 2005 order under either Fed.R.Civ.P. 59(e), made applicable to this matter by Fed. R. Bankr.P. 9023, or under Fed.R.Civ.P. 60(b), made applicable to this matter by Fed. R. Bankr.P. 9024. *See In re Wedgestone Financial,* 152 B.R. 786 (Bankr.D.Mass.1993). For the reasons set forth below, the Court finds that the Debtors have failed to state grounds for reconsideration. Not only did the Debtors have adequate notice of the May 19, 2005 hearing, they and their counsel had adequate notice of all issues which might be raised at the hearing on the Chapter 13 Trustee's Objection to Americredit's amended proof of claim as a result of this Court's Memorandum and Order dated March 4, 2005. Indeed, the only remaining issues in the Debtors' Chapter 13 case were the disposition of Americredit's amended proof of claim and, if Americredit was overpaid, as the Court found that it was in its March 4, 2005 Memorandum, how any monies that Americredit would be required to disgorge would be distributed.

The Court further finds that the arguments raised by the Debtors are substantially the same as those initially raised in "Debtors' Objection to Trustee's Final Report and Account" which they filed on March 8, 2004. As discussed more fully below, this Court rejected the Debtors' argument that the Trustee unilaterally and

---

1. This statement is false. Debtors' counsel was electronically notified of the date and time of the hearing on the Trustee's Objection to the Amended Proof of Claim. In fact, a paralegal from the office of Debtors' counsel was in the Courtroom on May 19, 2005, for the purpose of observing the hearing.

2. The Court observes that the Debtors conflate the issues pertaining to the sum of $7012.11, which Americredit forwarded to the Chapter 13 Trustee, and the overpayment of Americredit's claim following the refinancing of their residence in the sum of $6,260.61. The characterization of these funds, and the issues of when and if they vested in the Debtors, are distinct.

without notice amended their plan when she claimed the sum of $7,012.11 as property of the estate in its Memorandum and Order dated March 4, 2005.

## II. PROCEDURAL BACKGROUND

The pertinent facts necessary to decide the Motion to Reconsider are set forth fully in the Memorandum dated March 4, 2005 pursuant to which this Court considered the "Debtors' Objection to the Trustee's Final Report and Account." The Trustee filed her "Trustee Report and Account" (the "First Report and Account") on December 22, 2003.[3] Approximately two months later, on February 26, 2004, she filed a Request for Discharge, in which she sought an order approving her First Report and Account, as well as the entry of "a Final Decree discharging the Trustee, closing the case and granting such further relief as may be just." The next day, February 27, 2004, the Court entered an Order Discharging Trustee and closing the Debtors' Chapter 13 case. In the interim, on December 29, 2003, the Debtors received their Chapter 13 discharge.

Approximately one week later, and approximately six weeks after the deadline for objections, the Debtors filed their Objection to the First Report and Account in which they alleged that Americredit had forwarded a check to the Trustee in the sum of $7,012.11 on or about December 16, 2003 and that the Trustee had inappropriately converted and distributed the proceeds from the check. According to the Debtors, the check represented a portion of insurance proceeds which had been paid by their insurance carrier to Americredit, as a result of a motor vehicle accident involving their automobile which occurred prior to the entry of the final confirmation order in this case. Seeking an order re-

quiring the Trustee to disgorge commissions earned in their case as a sanction, the Debtors argued that the Trustee unilaterally and without authority amended their plan without notice when she distributed $7,012.11 to their creditors.

On May 3, 2004, former bankruptcy judge, Carol J. Kenner, reopened the Debtors' case in light of the Debtors' Objection to the First Report and Account, ordered the Trustee to file an amended account, and ordered the parties to file briefs. On May 18, 2004, the Trustee filed a second Report and Account purporting to account for her distribution of the $7,012.11. On June 10, 2004, the parties filed a Joint Statement of Agreed Upon Facts. On July 26, 2004, this Court issued a procedural order scheduling an evidentiary hearing which was held on September 23, 2004. Following the September 23, 2004 evidentiary hearing, the Court, on October 4, 2004, issued another procedural order requiring the Debtors to submit further evidence, including evidence as to whether the Debtors applied or sought to apply their homestead exemption to any portion of the proceeds obtained from the refinancing of their residence. The Debtors submitted supplemental evidence on October 29, 2004.

## III. FACTS

The Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code on May 3, 2001. They filed their Schedules and Statement of Financial Affairs on the same day. Although the Debtors amended Schedules I and J several times, they never amended the remaining Schedules.

At the time of the bankruptcy filing, the Debtors owned real property located at 87

---

**3.** The docket reflects a duplicate entry dated

December 29, 2003. This appears to be a

Crestfield Drive, Brockton, Massachusetts, which they valued at $160,000, subject to a mortgage from "Country wide Home Loan" in the sum of $149,433.74 and a mortgage from "Household Finance" in the sum of $20,682, as well as a 1997 Mercury Villager Minivan (the "Vehicle"), which they valued at $12,095.00 and which was encumbered by a lien held by Americredit in the amount of $15,688.00. The Debtors claimed the Massachusetts Homestead exemption in the Brockton property. Although they claimed an exemption in another automobile, a 1988 Ford Bronco, they did not claim an exemption with respect to the Vehicle. Americredit timely filed a secured proof of claim with respect to the Vehicle on May 22, 2001 in the amount of $15,685.22, plus interest at the rate of 21%.

The Debtors filed their first Chapter 13 Plan with their Schedules and Statement of Financial Affairs on the petition date. They later modified their Plan on August 31, 2001 (collectively, the "Original Plan"). In Section I of their Original Plan, the Debtors provided for Americredit's claim in subsection (2), "Claims Subject to Modification to be Paid Through Plan." Specifically, they provided that "[a]ny claim amount in excess of the value of the collateral securing it is placed into Class IV."

The Debtors stated that Americredit's total claim was $15,688 and that the value of its collateral was $12,095. They proposed to pay the secured claim of $12,095 at an interest rate of 9% per year over a period of 60 months. This formula resulted in a monthly principal and interest payment of $251.07, with an aggregate amount of principal and interest payments of $15,064 payable to Americredit over the 60-month term of the Plan.[4] In the Liquidation Analysis, the Debtors valued the Vehicle at $12,545, slightly more than the $12,095 amount asserted in Section I(2) of the Plan. Thus, pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2), the Debtors proposed to bifurcate Americredit's claim into a secured portion of $12,095, plus interest, and an unsecured deficiency portion of $3,593 (i.e., the difference between $15,688 and $12,095), which they described as an "Unsecured Deficiency Claim from Class III," even though Section III of the Plan pertained to Administrative Claims. Under Section IV of the Plan, the Debtors proposed to pay general unsecured creditors, including Americredit with respect to its unsecured deficiency claim " a dividend of 10.00% of their claims."

In Section V of their Plan, captioned "Other Plan Provisions," the Debtors in subparagraph E, captioned "Other Chap-

---

clerical error.

4. The Debtors' Plan contained an additional paragraph under Section (I)(2) as follows:

> **N.B.** If the Amortization period set forth above for any of the mortgages or liens requires a final "balloon payment", such payment shall be made in the manner set forth below:
>
> ____ Refinancing
>
> ____ Sale
>
> ____ Other: _____
>
> | Mortgagee/Lienor | End of Term Payment | Projected Loan–to–Value Ratio at Plan Conclusion |
> | --- | --- | --- |
> | | | |
> | | | |
> | | | |
>
> **Total of Payments of Modified Secured Claims: $15,064**

ter 13 Plan Provisions," stated the following: "The property of the estate shall, under 11 U.S.C. 1322(b)(9) [sic], vest in the Debtor upon confirmation of the plan unless otherwise provided below."[5]

Almost four years ago, on September 18, 2001, the Court entered a confirmation order (the "First Confirmation Order") with respect to the Original Plan. Paragraph 3 of the First Confirmation Order provided, in part, the following:

> The effective date of confirmation of the Plain is *June 1, 2001.* The disbursements to be made by the Chapter 13 Trustee pursuant to the confirmed plan are set forth on the attached summary which is incorporated by reference... *Unless otherwise ordered by the court, all property of the estate as defined in U.S.C. §§ 541 and 1306[sic], including, but not limited to, any appreciation in the value of real property owned by the debtor as of the commencement of the case, shall remain property of the estate during the term of the plan and shall vest in the debtor(s) only upon discharge.* All property of the estate shall remain within the exclusive jurisdiction of the bankruptcy court. The debtor(s) shall not transfer, sell or otherwise alienate property of the estate other than in accordance with the confirmed plan or other order of the bankruptcy court. The debtor shall be responsible

for preserving and protecting property of the estate.

(emphasis supplied). Thus, in accordance with 11 U.S.C. § 1327(b), the Court's order contained a vesting provision that differed from the provision set forth in the Debtors' plan. Moreover, paragraph 5 of the Summary entitled "Unsecured Claims" provided: "The holders of unsecured claims total [sic] ... *$44,756.00* [inclusive of the unsecured deficiency claim of Americredit in the amount of $3,593.00] and shall receive a dividend *no less than 10%."* [sic][emphasis supplied].

The Debtors did not request reconsideration of the Court's order of confirmation. They did not file a notice of appeal from the Court's order, complaining that the order violated their due process rights by altering the time when property of the estate vested in them. Similarly, they did not file a notice of appeal complaining that the confirmation order provided for a "pot plan" or "base plan" as opposed to the percentage plan they proposed.[6]

Approximately nine months after the Court confirmed the Original Plan, the Debtors, on June 13, 2002, filed their First Amended Chapter 13 Plan; on August 8, 2002 they filed a "Corrected" Post–Confirmation First Amended Chapter 13 Plan (collectively, the "First Amended Plan"). The First Amended Plan did not alter the

---

**5.** Section 1322(b)(9) of the Bankruptcy Code provides in pertinent part the following:
> (b) Subject to subsections (a) and (c) of this section, the plan may— ...
> > (9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity ....
>
> 11 U.S.C. § 1322(b)(9).

**6.** According to the court in *In re Martin,* 232 B.R. 29 (Bankr.D.Mass.1999), "[A] 'percentage plan' is a plan which provides a set percentage of his claim each creditor will receive

but leaves the exact amount the debtor will pay in flux until all claims are approved. A 'pot plan' refers to a plan which provides that the debtor will pay a fixed amount or 'pot' of money into the bankruptcy estate but the percentage creditors will receive ultimately depends on the total amount of claims that are approved." *Id.* at 33–34 (citing *In re Witkowski,* 16 F.3d 739, 741 (7th Cir.1994)). *See also In re Stamm,* 265 B.R. 10, 12 (Bankr. D.Mass.2001); *In re Barbosa,* 236 B.R. 540 (Bankr.D.Mass.1999), *aff'd, Barbosa v. Soloman,* 235 F.3d 31 (1st Cir.2000).

treatment of Americredit's secured and unsecured claims.

Sometime in August 2002, the Debtors were involved in an automobile accident which resulted in the total loss of the Vehicle which was insured by Liberty Mutual. The Debtors did not notify the Chapter 13 Trustee or the Court of this circumstance; they did not modify their Chapter 13 plan to account for this changed circumstance.

Both the Original Plan and the First Amended Plan bifurcated Americredit's claim into secured and unsecured components of $12,095 plus interest, and $3,593, respectively, provided for a dividend of 10% to unsecured creditors, and had terms of 60 months. Additionally, the Debtors' Post–Confirmation First Amended Chapter 13 Plan contained the identical vesting provision which was in the Original Plan. The Court confirmed the First Amended Plan (the "Second Confirmation Order") on October 3, 2002, without knowledge that the Debtors' Vehicle had been declared a total loss. Through the Second Confirmation Order, the Court amended the treatment of some creditors, but not Americredit, increased the monthly plan payment amount, and included the provision that "[i]n all other respects, the previous Order confirming the plan dated *September 18, 2001* is in full effect." [emphasis in original].

Thus, despite the Debtors' statements in their plans that the unsecured creditors would receive a dividend of 10% of their claims, the first two confirmation orders either expressly or by incorporation provided that unsecured creditors would receive a dividend of *no less* than 10% and that all property of the estate would not vest in the Debtors until discharge. The Debtors did not object to the entry of the confirmation order submitted by the Chapter 13 Trustee and did not file a notice of appeal with respect to the order entered by the Court on October 3, 2002.

Between the time of the automobile accident and confirmation of the Debtors' First Amended Plan, Liberty Mutual, the Debtors' insurance carrier, on or about September 11, 2002, forwarded an insurance check in the amount of $7,663.08 to Americredit to compensate it for the loss of the Vehicle. It did not inform the Debtors of the payment, however, until July 24, 2003, over ten months later.

On October 3, 2002, the same day the Court entered the Second Confirmation Order and less than one month after receiving the insurance payment from Liberty Mutual, Americredit filed an amended proof of claim, listing the amount it was owed as "$9,454.48" with a contractual interest rate of 21%. The Debtors never objected to the amended proof of claim; they did not file an amended Chapter 13 Plan, although the Trustee spoke to their counsel advising him that he needed to address the amended claim.

In its Memorandum dated March 4, 2005, this Court found that the Debtors' counsel had actual knowledge of the amended proof of claim filed by Americredit and that Americredit, as of the filing date of its amended claim, deemed the secured portion of its claim to have been satisfied by its receipt of the insurance proceeds and payments it had previously received from the Trustee pursuant to the terms of the Debtors' plans.

Approximately nine months after Americredit filed its amended proof of claim, the Debtors, on July 14, 2003, filed a Motion for Leave to Obtain Post–Petition Financing with respect to their residence for the purpose of satisfying their obligations under the First Amended Plan. Disclosing that they intended to borrow $197,000, the Debtors, in their motion, stated: "[t]he

funds borrowed from First Financial will be used to pay off the existing obligations of the Debtors' Bankruptcy Estate." The Court allowed their motion on August 8, 2003 and also ordered the Debtors to file an amended plan to provide a shorter term and a lump-sum payment to the Trustee.

Obviously anticipating the Court's order, the Debtors filed, on August 8, 2003, their Post–Confirmation Second Amended Chapter 13 Plan (the "Second Amended Plan") through which they proposed a lump-sum payment to the Trustee of $33,739.00 to be paid from the proceeds of the refinancing. As in their prior plans, the Debtors included language purporting to vest property of the estate upon confirmation.

In their Second Amended Plan, the Debtors disclosed that they intended to pay pre-and postpetition mortgage arrears and tax arrears, totaling $10,120; as well as the modified secured claim of Americredit in the sum of $15,064 for principal and interest, *plus* $9,199.02, which they identified as an "End Term Payment." Thus, the Debtors proposed to pay $34,384 toward secured debt, $24,263 of which was attributable to the Vehicle which they had valued at $12,095, and a 10% dividend to unsecured creditors with claims totaling $34,336, including Americredit's deficiency claim of $3,593.[7] The Debtors calculated the plan payment with reference to total claims of $37,817, plus the Trustee's commission of $4,202 ($10,120 + $15,064 + $9,199 + $3,434 + $4,202), for a total plan payment of $42,019, less $8,280 paid to date, for a total amount to be paid from the refinancing of $33,739.

On September 11, 2003, the Debtors closed on the refinancing of their residence

7. The Debtors did not alter the treatment of Americredit's claim. They continued to bifurcate the claim in the same manner as in their prior plans, even though Americredit had received insurance proceeds and changed its claim from a secured claim to an unsecured deficiency claim. Consistent with prior treatments, in Section I(A)(2) of their Plan, "Claims Subject to Modification to be Paid Through Plan," the Debtors bifurcated the amount of Americredit's claim of $15,688.00 into a secured portion of $12,095.00, plus interest, and an unsecured portion in the sum of $3,593.00, even though this plan was filed after the total loss of the Vehicle, after the Debtors were notified that Liberty Mutual delivered the insurance proceeds to Americredit, and after Americredit filed its amended unsecured deficiency claim for $9,454.48. In their Second Amended Plan, the Debtors did not modify either the treatment of Americredit's claim or the valuation of the Vehicle contained in Section I of the Plan ($12,095.00) and in the Liquidation Analysis ($12,545.00), a $450.00 inconsistency that has never been explained. In response to the Court's question why the plan was not amended after the destruction of the Vehicle, Debtors' counsel stated his belief that he was precluded from modifying the plan based upon the Sixth Circuit's decision in *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000), a case involving the postconfirmation, voluntary surrender of an automobile, not the postconfirmation destruction of an automobile in an accident. In this Court's view, Debtor's counsel's belief that he was precluded from seeking modification of the plan under § 1329(a) is an incorrect interpretation of the law. *Nolan* is inapposite as it involved a voluntary surrender of collateral, not destruction of collateral. Moreover, *Nolan* has not been adopted as the law in this jurisdiction. Indeed many courts do not follow *Nolan*, and the decision has been criticized by the leading commentator on Chapter 13. *See* K. Lundin, Chapter 13 Bankruptcy, § 238.1, at 218–12–13 (3d ed.2002). In this Court's view, after learning of the destruction of the Vehicle, and the payment of insurance proceeds, Debtor's counsel should have filed a motion to modify the plan under § 1329(a) and an amended plan providing for the reduction in Americredit's allowed secured claim under § 506(a) and an increase in Americredit's allowed unsecured claim arising out of the deficiency. Alternatively, Debtors' counsel could have filed a motion to reconsider to Americredit's proof of claim to take into account the destruction of the Vehicle, *see* 11 U.S.C. § 502(j), or a motion for valuation under Fed. R. Bankr.P. 3012.

and made the $33,739.00 lump-sum payment from the equity in their Brockton residence to the Trustee as required under their Second Amended Plan. On November 13, 2003, United States Bankruptcy Judge Carol J. Kenner confirmed the Second Amended Plan (the "Third Confirmation Order") thus reducing the plan term to 17 months and the monthly plan payment to $0.00. The Third Confirmation Order also provided: **"As of August 2003, the debtors have paid $8,820.00 [8] to the Trustee. The debtors made a lump-sum payment in the amount of $33,739.00, which appears to have paid off the plan in full.** In all other respects, the previous Order confirming the plan dated *October 3, 2002,* is in full effect." [emphasis in original]. The October 3, 2002 confirmation order, in turn, incorporated the original confirmation order dated September 18, 2001. Thus, the Trustee received a total of $42,019 in this case and distributed the funds to creditors.

The Debtors did not file a request for reconsideration of the Court's November 13, 2003 confirmation order, nor did they file a notice of appeal.

Following the Debtors' delivery of the lump-sum payment from the refinancing of their residence, the Trustee paid Americredit $15,064 on the secured portion of its claim (i.e., $12,095 plus interest in the amount of $2,969), not $24,263 according to the Post Confirmation Second Amended Chapter 13 Plan (i.e., $15,064 plus $9,199), and $1,575.07 on the unsecured portion of its claim. Americredit, like the other unsecured creditors received a dividend of 43.8% with respect to the unsecured portion of its claim according to the First Report and Account.

The First Report and Account did not reflect Americredit's receipt of $7,663.08 from Liberty Mutual or the so-called End Term Payment of $9,199.02. It did not reflect Americredit's amended unsecured deficiency claim in the amount of $9,454.48 either. As a result of the Debtors' failure to modify their plan to change the treatment of Americredit's claim after the automobile accident, the Trustee paid Americredit strictly in accordance with the Debtors' plans and the confirmation orders, except with respect to the so-called End Term Payment of $9,199.02. Because of the superseding amended proof of claim, to which neither the Debtors nor the Trustee objected, Americredit's claim was not properly paid by the Trustee. The Trustee overpaid Americredit on the secured portion of its claim, which had been reduced to zero as a result of the accident and Americredit's receipt of the insurance proceeds and prior payments from the Trustee, and underpaid the unsecured portion of the claim, which it had increased from $3,593.00 to $9,454.48. Following the Trustee's disbursement of the lump-sum payment to creditors, including Americredit, the Debtors believed that their obligations under the Second Amended Plan were satisfied. In November 2003, they advised the Trustee's office, for the first time, of the existence of the Liberty Mutual insurance proceeds which were still in the possession of Americredit. The Debtors and their counsel made repeated phone calls to the Trustee's office to claim an interest in the proceeds which they considered an "overpayment" of their obligations under the Second Amended Plan. The Debtors' counsel also faxed correspondence to Americredit on November 25, 2003, advising it that it had been overpaid due to its receipt of both the insur-

---

8. This was apparently a typographical error, and the amount should have been $8,280.00.

(Trustee's Brief at Page 3).

ance proceeds and payments from the Trustee. Following communications between the Debtors' counsel and Americredit, Debtors' counsel advised the Trustee, on or about December 10, 2003, that Americredit would be forwarding the Trustee a check in the approximate amount of $7,012.11.[9] The Debtors again claimed an interest in those funds, although they had not claimed an exemption in the Vehicle, and the confirmation order did not provide for vesting until the entry of the discharge or for a percentage plan.

The Trustee responded to the Debtors' claim to the insurance proceeds, asserting that any funds returned to her directly by Americredit would be treated as a "creditor refund," which would be distributed to the Debtors' unsecured creditors. She reasoned that the Second Amended Plan was a "base" or "pot" plan. The Trustee suggested to Debtors' counsel that the Debtors should amend their plan if they wished to change the treatment of the Americredit claim. The Debtors did not file an amended plan or an objection to Americredit's superceding proof of claim at that time.

In late December 2003, the Trustee received a check from Americredit in the amount of $7,012.11 (the "Funds"). The Trustee posted the Funds to the Debtors' case as a "creditor refund." For the Trustee's internal accounting purposes, she applied the "creditor refund" to the secured portion of Americredit's claim by reducing the amount paid on the secured portion of the claim ($15,064) by the amount of the Funds ($7,012.11). She then distributed the Funds to the Debtors' unsecured creditors during the first week of January 2004,[10] resulting in a dividend to unsecured

creditors of 60.3%. In her May 18, 2005 Amended Final Report and Account, which was filed pursuant to Judge Kenner's May 3, 2004 order, the Trustee indicated that she received $42,019.00; that Americredit's secured claim was $15,064.00 of which $8,051.89 was paid; that $7,012.11 was the "balance due or discharged amount;" and that the "Amount Allowed" and "Amount Paid" for Americredit's unsecured claim were both $1,575.07. The Amended Final Report and Account, however, should have reflected receipt of $49,03.11 ($42,019.00 plus $7,012.11) and the amount of Americredit's amended proof of claim. The Debtors, however, did not object to the Amended Final Report and Account.

Pursuant to its March 4, 2005 Order, this Court sustained the Debtors' Objection to the Trustee's First Report and Account, in part; overruled the Debtors' request for disgorgement of the Trustee's commissions; and vacated the February 27, 2004 Order granting the Trustee's Request for Discharge. The Court noted that two outstanding issues remained:

First, Americredit was overpaid on the secured portion of its claim based on the filing of its amended proof of claim on October 3, 2002. Second, depending upon the extent of the overpayment of its secured claim, Americredit likely was underpaid on the unsecured portion of its claim because no party ever contested its $9,454.48 amended unsecured deficiency claim. Pursuant to Fed. R. Bankr.P. 3001(f), the amended proof of claim constituted prima facie evidence of the validity and amount of the claim. Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a par-

---

9. The parties did not explain why the check was $650.97 less than the original Liberty Mutual check forwarded to Americredit.

10. The First Report and Account, which was filed on December 22, 2003 and pre-dated the Trustee's receipt of the Funds, did not account for the disbursement of the Funds.

ty in interest objects. The Trustee's First Report and Account, which treated the allowed unsecured portion of the claim at $3,593.00 is thus incorrect on its face as is the Second Report and Account which treated the allowed unsecured portion of the claim at $1,575.07.

As stated above, Americredit's amended unsecured deficiency claim in the amount of $9,454.48 cannot be reconciled based on the facts and evidence before this Court. Accordingly, the Court orders the Trustee to file an objection to the amended proof of claim or a stipulation with Americredit by March 21, 2005. Upon the Court's receipt and review of these pleadings and responses thereto, the Court shall conduct such further hearings and/or enter such further orders as are necessary and appropriate, including, without limitation orders compelling the Trustee to commence proceedings against Americredit for any net overpayment received by it in this case.

*In re Smith,* No. 01–13726–JNF, op. at 22–24 (Bankr.D.Mass.2005).

Two weeks after this Court issued its Memorandum and Order, the Trustee filed her Objection to Amended Proof of Claim of Americredit. In her Objection, which she served on Debtors' counsel, she observed the following:

At the time of the loss of the vehicle, the balance remaining to be paid on AmeriCredit's secured claim would have been $9,559.12. (See amortization schedule attached here and marked as Exhibit "A"). Since AmeriCredit received $7,663.08, from Liberty Mutual, the unsecured portion remaining after the loss of the vehicle would have been $1,896.04.

After reviewing the accounting, the Trustee has now determined that due to AmeriCredit's failure to adjust the claim

pursuant to the confirmed plan, AmeriCredit was overpaid. According to the confirmed plan, AmeriCredit would have been entitled to $2,535.88 on the secured portion of their claim [$12,095 minus the balance due as of September, 2002 of $9,559.12], and $830.47 [the unsecured portion of the claim, $1,896.04, multiplied by the dividend percentage of 43.8%] on the corrected unsecured portion of their claim.

\* \* \* \* \* \*

The Trustee asserts that AmeriCredit's Amended Proof of Claim is improper, as AmeriCredit failed to properly credit the amounts received from the Trustee and Liberty Mutual, failed to adjust their accounting to take into account the bifurcation of the claim and interest rate of 9%, and failed to accurately list the amount of the secured and unsecured claim, thereby resulting in an overpayment of $6,260.61 by the Trustee.

According to the Trustee's records, and as confirmed by AmeriCredit's own accounting, AmeriCredit was paid a total of $9,626.96. Therefore, AmeriCredit was overpaid $6,260.61. The Trustee has brought this overpayment to the attention of AmeriCredit, but has not received a response as to whether AmeriCredit will refund the overpayment.

The Trustee further requests that the Court require AmeriCredit to return the overpaid funds to the Trustee. The Trustee will await further instruction from this Court as to the application of the funds once received.

At the conclusion of her Objection to the Amended Claim, the Trustee requested instructions with respect to the application of the returned funds.

The Court scheduled a hearing on the Chapter 13 Trustee's Objection to Ameri-

credit's amended proof of claim, and Debtors' counsel was electronically notified of the date, time and place of the hearing. He failed to appear, although a paralegal from his office observed the proceedings on May 19, 2005.

At the hearing held on May 19, 2005, the Court authorized and directed the Trustee to distribute the funds received from Americredit to the Debtors' creditors. The Debtors in their Motion to Reconsider argued that they lacked notice of the hearing and presumably notice that the Court would order disbursement of the funds to their creditors. They also stated that "Americredit was overpaid when the Trustee turned over a $7,012.11 check from refinancing" and that "the funds received are the proceeds of the exempt property, namely their homestead equity." Thus, the Debtors appear to confuse the $7,012.11 which the Trustee has distributed with the $6,260.61 which she obtained authority to recover from Americredit as a result of the overpayment of its claim.

## III. DISCUSSION

This Chapter 13 case has engendered a number of complicated legal and procedural issues. All parties have struggled with these issues and expended valuable time and resources because of the Debtors' failure to promptly disclose the loss of the Vehicle and their counsel's failure to take appropriate and timely action to obtain a proper adjustment of Americredit's claim in view of the changed circumstances by either objecting to Americredit's claim or modifying the Debtors' Chapter 13 plan. See 11 U.S.C. § 1329(a); Fed. R. Bankr.P. 3007. The opportunity to take appropriate action occurred prior to the filing of the Post–Confirmation Second Amended Plan. Another opportunity presented itself when Americredit filed its amended proof of claim. Finally, the Debtors could have

appeared through their counsel at the May 19, 2005 hearing to address any remaining issues. Because this Court finds that the Debtors and their counsel had actual notice of that hearing, the Court finds their Motion to Reconsider on the ground of lack of adequate notice is without merit.

■ The pleadings filed by the Debtors, or not filed as the case may be, enable this Court to determine the remaining issues. As noted above, the Debtors' Second Amended Plan contained an unexplained figure of $9,199.02, which the Debtors added to the sum of principal and interest payable to Americredit with respect to its secured claim, namely $15,064. The addition of this figure resulted in a total plan payment of $42,019, comprised of sums which the Debtors had already paid in the amount of $8,280 and proceeds from the refinancing of their residence. Thus, the Debtors' calculation of the plan payment, not a calculation by anyone else, resulted in the payment of a dividend to unsecured creditors of 43.8%. As a result, this Court finds that the Debtors are judicially estopped from contending that they have any substantive right to limit the dividend payable to their unsecured creditors to 10%. Moreover, the Court discussed the order confirming the Debtors' various plans as creating "pot plans" in its Memorandum of March 4, 2005, stating:

... the Original Confirmation Order, and all of the subsequent confirmation orders, conferred "pot plan" status on the Debtors' various plans. The Original Confirmation Order unambiguously provided that the unsecured creditors would receive a dividend of "no less than 10%," and all subsequent confirmation orders provided that previous orders were in full effect. Additionally, all the confirmation orders provided that "all property of the estate would remain property of the estate during the term

of the plan and would vest in the Debtors only upon discharge. Because the various confirmation orders created a series of pot plans, the Court finds that the Trustee was not required to seek modification in order to increase the dividend to creditors," *see In re Martin,* 232 B.R. 29, 34 (Bankr.D.Mass.1999), *see also In re Stamm,* 265 B.R. 10, 12 (Bankr.D.Mass.2001)(the preference in the First Circuit is for "pot plans"), and *In re Barbosa,* 236 B.R. 540, 548 (Bankr. D.Mass.1999), *affd., Barbosa v. Solomon[Soloman],* 235 F.3d 31 (1st Cir. 2000), particularly as the insurance proceeds would constitute property of the estate. *See* 11 U.S.C. §§ 541(a), 1306. The Debtors were obligated to make payments in accordance with the Second Amended Plan as long as creditors remained who had not been paid in full. *Martin* at 34 (citing *In re Beasley,* 34 B.R. 51, 54 (Bankr.S.D.N.Y.1983)).

*In re Smith,* No. 01–13726–JNF, Slip op. at 17–18 (Bankr.D.Mass.2005).

■ To the extent the Motion to Reconsider is premised on the Debtors' arguments that the confirmation order utilized in this district contains language that impairs and modifies their legal rights under substantive bankruptcy law relating to the timing and extent of revesting of estate property, the Court finds that the Debtors waived this argument by failing to file a notice of appeal with respect to this Court's March 4, 2005 order or any of the confirmation orders issued in their case. The Court further finds that the Debtors' present argument in support of reconsideration to be specious and calculated to divert attention from their failure, through counsel, to timely and responsibly address events and changes of circumstance in their Chapter 13 case. As noted above, the substantive right which they claim has been violated, namely the Trustee's dis-

bursement of the insurance proceeds in the sum of $7,012.11 as postpetition property of the estate payable to creditors as a result of the confirmation order which conferred "pot plan" status on the Debtors' case, was addressed by this Court in its Memorandum and Order dated March 4, 2005.

In their Motion to Reconsider, the Debtors also appear to suggest that because they proposed plans which provided a 10% dividend to unsecured creditors and vesting at the time of confirmation, this Court was precluded from entering orders of confirmation that did not vest property of the estate in them at confirmation or required them to pay *no less than a 10% dividend.* The Debtors, as this Court noted, had three occasions to challenge the order of confirmation utilized in this district and failed to do so. The Debtors neither requested a modification of the orders entered on September 18, 2001, October 3, 2002, or November 13, 2003 nor filed notices of appeal with respect to those orders. Accordingly, the Court finds that the Debtors waived any due process objection to the orders entered by this Court, which orders are expressly authorized by the provisions of 11 U.S.C. § 1327(b). Thus, contrary to any suggestion on the Debtors' part, property of the estate remained property of the estate during the terms of the various plan and did not vest in them until discharge. Thus, their objection to the Official Local Form 4 used in this district is barred.

The Court rejects the Debtors' arguments, raised for the first time at the hearing on the Motion to Reconsider, with respect to the Official Local Form 4, the Order Confirming Chapter 13 Plan. The Court finds that the use of Official Local Form 4 did not impair their substantive rights or violate the bankruptcy court's rulemaking authority. The model Order

Confirming Chapter 13 Plan is not inconsistent with 11 U.S.C. § 1322(b)(9), and it is not unconstitutional.

This Court concludes that the Official Form is not invalid under Fed.R.Civ.P. 83 or Fed. R. Bankr.P 9029. The United States District Court for the District of Massachusetts, in accordance with its Local Rule 204, has approved the Massachusetts Local Bankruptcy Rules, including Official Form 4 which provides that postpetition assets continue to be property of the estate. The District Court, in accordance with 28 U.S.C. § 2075, Fed.R.Civ.P. 83 and Fed. R. Bankr.P. 9029, has retained supervisory authority over the local bankruptcy rules in this jurisdiction. Under Local District Court Rule 204, the bankruptcy court proposes local rules which are subject its approval. Local Official Form 4 has been approved by the District Court in all versions of the Local Bankruptcy Rules since the form was adopted, specifically in the third, fourth and fifth editions of the local rules.

 Although the Court considered these arguments, the Motion to Reconsider can be determined without reference to them because of the absence of timely appeals to the various orders of confirmation. The confirmation orders are thus valid and binding on the Debtors pursuant to 11 U.S.C. § 1327(a). They are not subject to challenge at this late date. Although the Debtors contend that the Official Local Form 4 interferes with their substantive right to obtain vesting of property at confirmation, as discussed in the March 4, 2005 Memorandum, 11 U.S.C. § 1327(b) provides that the property of the estate may vest in the debtor "*[e]xcept as otherwise provided . . . in the order confirming the plan. . . .*" (emphasis supplied). Contrary to the Debtors' assertion, the Bankruptcy Code provides them with no absolute right to vesting of property prior to discharge, and, if the Court orders otherwise, property of the estate does not vest in them upon confirmation.

 In the instant case, the Court ordered otherwise, consistent with practice in this jurisdiction for the past five years. The orders of confirmation were not inconsistent with their right to propose plan provisions, including vesting. The Court, however, is not required to confirm a plan which calls for vesting under the provisions of § 1327(b), particularly in view of the First Circuit's decision in *Barbosa v. Soloman.* Thus, the Court finds that the sum of $7012.11 which Americredit forwarded to the Chapter 13 Trustee was a postpetition asset that was property of the estate. The refund existed and was transmitted to the Trustee before the Debtors' received a discharge.

In *In re Bacon,* 274 B.R. 682 (Bankr. D.Md.2002), the bankruptcy court addressed an issue similar to the one present in the instant case. The debtor argued that she was entitled to a refund of payments which the Chapter 13 trustee had distributed pro rata to unsecured creditors pursuant to her plan, a refund comprised, in part, of monies that a secured creditor had returned to the estate following the satisfaction of its claim as a result of a refinancing. Noting that the debtor had failed to amend her plan pursuant to § 1329(a)(3) to alter the amount of the distribution to the creditor whose claim originally had been provided for under her plan to take account of the payment of the claim as a result of the refinancing, the court stated:

> When the trustee has funds returned from secured creditors, the trustee is obligated to disburse those funds in accordance with the confirmed Plan. If the debtor did not want these funds to be distributed according to the Plan, it was her responsibility, pursuant to § 1329, to

modify her Plan. When, she failed to do so, the trustee acted precisely as he was required to under the debtor's confirmed Plan.

274 B.R. at 684–85. The court added that the entry of a discharge did not alter the result.

It stated:

Section 524 governs the effect of discharge. Section 524(a)(2) provides that "[a] discharge in a case under this title ... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. Accordingly, none of the creditors subject to the debtor's discharge may proceed against the debtor personally.

However, § 524(e) provides, "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Therefore, although the creditors could not proceed against the debtor personally for this debt, that does not necessitate that they do not have any rights in the money that was returned to the trustee.

Moreover, numerous courts have found that subsequent to entry of discharge, creditors still have a claim against other entities, such as the bankruptcy estate, even though the individual debtor has been discharged and is no longer personally liable on the debt....

Because there were certain unsecured creditors filing claims who had not been paid in full, those creditors were entitled to the pro rata distribution from the $1,432.66 returned to the trustee.

Accordingly, the court finds that the trustee was required to disburse the funds which were returned to him according to the Plan, absent timely modification of the Plan by the Debtor. The fact of the Discharge is immaterial.

274 B.R. at 685–86.

As indicated above, the facts in *Bacon* are remarkably similar to those in the instant case. In that case, as in this case, the debtor was seeking the return of a portion of the funds necessary to satisfy the terms of the her plan. In the instant case, the Court ruled on March 4, 2005 that the Debtors were not entitled to the $7,011.12, which the Trustee has distributed. The Debtors did not appeal the Court's ruling. To the extent the Debtors are seeking the return of $6,260.61, a sum which represents the amount Americredit was overpaid, the overpayment was made from the refinancing proceeds of $33,739 and prior plan payments totaling $8,280. Thus, the Debtors through their Motion to Reconsider essentially are asking the Court to reduce the amount payable under their confirmed plan from $42,019 by $6,260.61. For the reasons stated by the Court in *Bacon*, the Court declines the Debtors' request.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order denying the Debtors' Motion to Reconsider its order of May 19, 2005 as the Debtors have failed to meet their burden under either Fed. R. Bankr.P 9023 or Fed. R. Bankr.P. 9024. The Chapter 13 Trustee shall be directed to distribute the sum of $6,260.61 to the Debtors' unsecured creditors in accordance with the terms of their confirmed plan.