**In re Richard Anthony McBRIDE, Debtor.**

No. 02–66262.

United States Bankruptcy Court, N.D. New York.

Jan. 9, 2006.

---

452

Knudsen Legal Service, Francis C. Stokes, of Counsel, Syracuse, NY, for Debtor.

Deily, Mooney & Glastetter, LLP, Mark D. Nizer, of Counsel, Albany, NY, for AmeriCredit Financial Services, Inc.

Lynn Harper Wilson, Syracuse, NY, Staff Attorney for Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Under consideration by the Court is a motion filed on June 17, 2005, by Richard Anthony McBride (the "Debtor") seeking disallowance of a deficiency claim filed on behalf of AmeriCredit Financial Services, Inc. ("AmeriCredit") on April 5, 2004, in the amount of $9,187.02. Opposition to the motion was filed on behalf of AmeriCredit on July 15, 2005.

The motion was originally heard on July 19, 2005, at the Court's regular motion term in Syracuse, New York.[1] It was adjourned to August 16, 2005, in order for the parties to provide the Court with memoranda of law in support of their respective positions. After hearing oral argument on August 16, 2005, the Court adjourned the motion to September 20, 2005, to consider the matter. At the hearing on September 20, 2005, the Court indicated it would take the matter under submission and issue a written decision.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A) and (O).

### FACTS

The Debtor filed a voluntary petition pursuant to chapter 13 of the Code, 11 U.S.C. §§ 101–1330 ("Code"), on October 16, 2002. According to his schedules, the Debtor listed a debt owed to AmeriCredit in the amount of $15,198.34 secured by a 2001 Oldsmobile Alero. Of that amount, the Debtor asserted that $3,823.34 was unsecured based on a current market value of $11,375 of the vehicle. *See* Schedules B and D attached to the Debtor's Petition. In his plan, filed along with his petition and schedules, the Debtor proposed to make "regular payments outside of Plan" to AmeriCredit on the automobile loan.

The bar date set for filing proofs of claim in the case was set for February 16, 2003. On January 16, 2003, a proof of claim was filed on behalf of AmeriCredit asserting a secured claim of $15,200.95. The retail installment contract attached to the proof of claim is dated February 2, 2001, and reflects a loan of $16,519.32. According to the docket, the Debtor did not object to the proof of claim.[2] On March 26, 2003, the Court signed an Order confirming the Debtor's plan, which provided for payments of $612 per month over a period of 42 months and a dividend to unsecured creditors of 100%. With respect to AmeriCredit, it provided for direct payments by the Debtor totaling $15,200, arguably pursuant to the original terms of the retail installment contract.

On August 23, 2003, AmeriCredit filed a motion seeking relief from the automatic stay in order to repossess the Debtor's vehicle as a result of the Debtor's default on the regular monthly payments of $306.10 beginning in March 2003, the same month the Debtor's plan was confirmed. In its motion, AmeriCredit asserted a net balance due on the debt of $15,263.48 and a wholesale value of the motor vehicle of

---

1. In its motion the Debtor also requested that the Court vacate its prior Order of April 29, 2005, which vacated the discharge issued to the Debtor on July 27, 2004. On August 15, 2005, the Court signed an Order granting that portion of the Debtor's motion, thereby discharging the Debtor without prejudice to the rights of AmeriCredit.

2. AmeriCredit is identified on the Trustee's Final Report and Account, filed July 27, 2004, as having an allowed claim of $15,200.95 for which Debtor was to make direct payments.

454

$7,150 (Docket No. 13). The Court granted the relief sought by AmeriCredit on September 25, 2003. The Order, submitted to the Court by AmeriCredit, provides that "all surplus monies, if any, obtained by AmeriCredit Financial Services, Inc. after liquidation of the vehicle, shall be remitted to the Trustee." (Docket No. 15). It makes no mention of any right to seek a deficiency from the Debtor's chapter 13 estate.

According to AmeriCredit, the vehicle was repossessed on October 27, 2003. AmeriCredit allegedly made application shortly thereafter to the New York State Department of Motor Vehicles to obtain a "repossession title" in order to be able to sell the vehicle. The title was received on or about January 2, 2004, and the vehicle was sold at auction on January 14, 2004. AmeriCredit filed an amended proof of claim, dated March 26, 2004, on April 5, 2004,[3] alleging a deficiency in the amount of $9,187.02, which included expenses incurred for recovering and reconditioning the vehicle.

According to the Trustee's Final Report and Account, filed on July 27, 2004, the case was concluded on January 5, 2004 (Docket No. 22). The Order discharging the Debtor "after completion of chapter 13 plan" was signed on July 27, 2004, approximately two years after the case was filed.[4] However, by letter dated August 24, 2004,

the Trustee requested that the case be held open "due to a late filed deficiency claim." (Docket No. 25). The Trustee later sought to vacate the Debtor's discharge, arguing that if he "had been aware that an amended claim had been filed by AmeriCredit seeking payment through the plan, the Trustee would not have filed the Final Report and Accounting...." (Docket No. 34). The Court signed an Order vacating the Discharge Order on April 29, 2005. As noted previously, by Order dated August 15, 2005, the Court reinstated the Debtor's discharge without prejudice to the rights of AmeriCredit.

### DISCUSSION

Whether or not to grant the Debtor's motion to disallow the deficiency claim of AmeriCredit requires the Court to examine the specific facts of this case in the context of a chapter 13. As noted above, AmeriCredit initially filed a proof of claim asserting a secured claim of $15,200.95. While it is not mandatory that a secured creditor file a proof of claim (see Rule 3002(a) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.")), a proof of claim, if filed, constitutes prima facie evidence of the validity and amount of the claim pursuant to Fed.R.Bankr.P. 3001(f). In this case, the Debtor did not object to the claim of AmeriCredit and, in fact, pro-

---

**3.** According to AmeriCredit's counsel, it is AmeriCredit's practice to delay 90 days after the sale of a vehicle before filing a proof of claim for any deficiency in order to be certain that the buyer's check has cleared following the auction.

**4.** At the hearing on July 7, 2005, Debtor's counsel represented to the Court that the Debtor had filed his petition in the hopes of curing the arrears on the mortgage on his residence in Syracuse, New York, held by Wells Fargo Home Mortgage, Inc. The Debtor's plan provided for the payment of $4,500 in arrears over the life of the plan to Wells

Fargo. On December 24, 2002, some three months prior to the plan's confirmation, the Court signed an Order granting Wells Fargo relief from the automatic stay to allow it to proceed with eviction of the Debtor following a judicial foreclosure sale which had allegedly occurred on May 7, 2002, approximately six months prior to the commencement of the Debtor's case. Apparently, without having to make the payments on the mortgage arrears, the Debtor was able to complete his payments to creditors in less than the 42 months originally provided for in his plan.

vided that AmeriCredit was to be paid $15,200 directly by the Debtor outside of the plan.

In *In re Fowler,* Case No. 96–15386, 1998 WL 748643 (Bankr.E.D.Va. Oct. 27, 1998), the court was confronted with the issue of "whether a creditor—which filed a proof of claim asserting it was fully secured by the debtor's automobile and did not object to confirmation of a plan expressly providing that it would receive *no* payment through the plan . . .—may now, after being granted relief from the automatic stay to repossess the automobile, compel the debtor to modify the confirmed plan to include the creditor's unsecured deficiency claim." *Id.* at *1. The court concluded that "the order confirming the plan was *res judicata* as to the creditor's rights, and that no basis exists upon which the debtor can now be compelled to provide for payment of the claim through the plan." *Id.* The court's ruling was in the context of what it referred to as an "objection" by the creditor, American Investment Bank, N.A., to confirmation of the chapter 13 plan seven months after confirmation. *Id.* The court indicated that it would treat the objection as a motion to modify the debtor's plan pursuant to Code § 1329. *Id.* n. 1.

In *Fowler* the debtor's plan was confirmed on February 27, 1997, and provided for a 100% dividend to unsecured creditors. On August 1, 1997, the court granted relief from the automatic stay to allow American Investment Bank, N.A. to repossess the debtor's vehicle. *Id.* at *1. Like the matter under consideration by this Court, there was no provision in the order granting relief from the stay concerning any deficiency that might arise from the sale of the vehicle. On September 23, 1997, the creditor filed an amended proof of claim against the debtor asserting a deficiency claim of $8,170.21. *Id.* at *2.

The court analyzed the facts pursuant to Code § 1329, noting a split regarding whether a secured claim may be modified postconfirmation due to a change in circumstances. *Id.* at *4. One line of cases holds that *res judicata* prevents a party from reclassifying a previously allowed claim as unsecured. *Id.* at *4 (citing *In re Banks,* 161 B.R. 375, 378–79 (Bankr. S.D.Miss.1993); *In re Sharpe,* 122 B.R. 708, 710 (E.D.Tenn.1991); *In re Abercrombie,* 39 B.R. 178, 179–80 (Bankr.N.D.Ga. 1984)). Other courts have allowed the surrender of the underlying collateral to the secured creditor and the modification of the plan to account for an increased unsecured deficiency claim to that creditor. *Id.* (citing, *inter alia, In re White,* 169 B.R. 526, 530–31 (Bankr.W.D.N.Y.1994); *In re Rimmer,* 143 B.R. 871, 874–75 (Bankr. W.D.Tenn.1992); *In re Jock,* 95 B.R. 75, 77 (Bankr.M.D.Tenn.1989)).

The court in *Fowler* in reaching its conclusions did not have resolve whether the surrender of the collateral and the resulting deficiency served as a basis for amending the plan pursuant to Code § 1329 because the debtor's plan "expressly relieved the debtor from *any* liability for the claim." *Id.* at *5. In *Fowler* the plan provided for payments outside the plan not by the debtor, but by the co-owner of the car. *Id.* (noting that "this is not a situation in which payment of a secured creditor's claim was being made . . . by the debtor outside the plan, and in which the issue is merely one of adjusting the claim to take account of a post-confirmation change of circumstances"). Because the creditor had not objected to that provision in the plan which required that it look to a third party for payment, the court concluded that the creditor could not look to the debtor for payment of the deficiency claim. *Id.* The court also pointed out that the creditor had asserted a fully-secured claim

when it filed its proof of claim and that modifying the plan to now include the deficiency claim would prejudice the other creditors who were anticipating a 100% recovery on their claims. *Id.* at \*6. Accordingly, the court denied what it considered to be a motion to modify the debtor's plan. *Id.*

While there are certainly factual similarities between *Fowler* and the matter *sub judice*, there are also distinctions to be drawn between the two cases. First of all, the motion before this Court was filed by the Debtor requesting that the Court disallow or expunge the deficiency claim of AmeriCredit. In addition, the Debtor's plan provides that the payments were to be made by the Debtor, not a co-debtor, outside of the plan. Thus, the issue that the *Fowler* court determined it did not need to resolve is the very issue now before this Court.

Of relevance to the Court's consideration of this matter are two recent decisions involving chapter 13 debtors whose vehicles were repossessed by the secured creditors postconfirmation. *See In re Adkins,* 425 F.3d 296 (6th Cir.2005); *In re Matthews* [5], 313 B.R. 489 (Bankr.M.D.Fla. 2004). In *Matthews* AmeriCredit filed a second proof of claim for a deficiency after the confirmation order had been entered. At the time of confirmation, AmeriCredit knew that the debtors intended to surrender the vehicle. In fact, the order granting relief from the automatic stay to repossess the vehicle had been granted on consent of the debtors. *Id.* at 492. AmeriCredit had filed a secured claim in the case and sought reconsideration of the court's order treating AmeriCredit's second proof of claim as a duplicate "secured" claim. *Id.* at 491. The second proof of claim was filed more than a year after the confirmation order was entered. *Id.* at 492. AmeriCredit requested that its second claim be allowed as an amendment to that initially filed and that it be treated as an unsecured claim "for which it should receive payments under the debtors' confirmed plan." *Id.* The issue before the court was whether the unsecured claim for the deficiency could be allowed since it was filed after the bar date and after confirmation of the plan. *Id.* at 492–93.

The court in *Matthews* noted that "an amendment filed after the bar date is permitted only where the original claim provided notice to the court of the existence, nature and amount of the claim and that it was the creditor's intent, expressed in the original claim, to hold the estate liable for the claim later set forth in the amendment." *Id.* at 493–94 (citations omitted). The court found that AmeriCredit had given no indication in its original proof of claim that it might at some point need to seek the recovery of a deficiency. *Id.* at 494. The court concluded that "the attempt to change the status of a claim from secured to unsecured is not considered an amendment, in the traditional sense, that is to be freely allowed." *Id.* (citations omitted). It went on to indicate that "[i]f the secured creditor wants to receive something more than its collateral value— a distribution on a deficiency under a confirmed plan—it must timely file either an unsecured proof of claim or a secured claim with a clear reservation of the right to file a deficiency claim." *Id.* citing *In re Bateman,* 331 F.3d 821, 827 (11th Cir. 2003). The court denied AmeriCredit's motion, noting that the second claim had been filed after the bar date and was not allowable as an amendment of the originally filed claim. The court, in reaching its conclusion, pointed out that prior to confirmation AmeriCredit was well aware that

---

5. Interestingly enough, *Matthews* also in-   volved AmeriCredit.

the vehicle was to be surrendered and should have protected its rights by asserting that a deficiency claim would be made. *Id.* at 495. As the court indicated, "[t]here is no justification for a delay over one year after confirmation to assert that claim." *Id.*

In our case, at the time the Debtor's plan was confirmed, the Debtor had not indicated any intent to surrender the vehicle, AmeriCredit was unaware that it would become necessary to seek relief from the automatic stay as a result of the Debtor's default in his payments on the vehicle. However, it also true that at the time of filing its motion pursuant to Code § 362(d), AmeriCredit was well within its rights to have reserved the right to file a deficiency claim. It was certainly reasonable to expect that the vehicle would have depreciated in value between the date it filed its proof of claim in January 2003 and the date it filed its motion for relief from the automatic stay in August 2003, some eight months later. In fact, in its motion for relief from the automatic stay, it asserted a wholesale value of $7,150 on the Debtor's vehicle, some $8,000 less than the amount it asserted in its proof of claim as the value of the collateral securing its claim of $15,200. Yet, AmeriCredit did nothing to address that possibility, as well as the probable costs associated with repossession and sale of the vehicle, until it filed its second proof of claim on April 5, 2004. Indeed, the order it submitted to the Court granting the relief from the automatic stay actually provided for turnover of any proceeds to the chapter 13 trustee in the unlikely event of a surplus.

In *Adkins*, DaimlerChrysler had filed a proof of claim in the debtor's case asserting a secured claim of $5,963.81 and placing a value on the debtor's vehicle of $5,842.50. *See Adkins*, 425 F.3d at 297. It objected to the debtor's proposed plan, which valued the vehicle at $5,525. *Id.* The plan was confirmed on November 8, 2001, and set the value of the vehicle at $5,842, and the plan provided for payment of an unsecured claim for $121.81. The payments to DaimlerChrysler were to be made by the chapter 13 trustee from plan payments of the debtor over a period of 59 months. *Id.* General unsecured creditors were to receive no less than 100% on their allowed claims. The debtor ultimately defaulted on his payments to the trustee in January 2001. As a result, DaimlerChrysler moved for relief from the automatic stay to repossess the vehicle. *Id.* at 297. The bankruptcy court granted the motion and in its order required that any deficiency resulting from the sale of the vehicle be paid as a secured claim, consistent with the holding in *Chrysler v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000). The chapter 13 trustee appealed the decision and district court ultimately affirmed the bankruptcy court.

The Court of Appeals for the Sixth Circuit, in affirming the district court, noted that in *Nolan* it had held that "section 1329 did not allow reclassification as an unsecured claim of a deficiency resulting from the sale of a vehicle surrendered post-confirmation." *Id.* at 299; *see also In re Coleman*, 231 B.R. 397, 399–400 (Bankr.S.D.Ga.1999) (finding that Code § 1329, which deals with plan modification, does not permit a post-confirmation reclassification of a secured claim). The court in *Nolan* reasoned that once a secured claim had been allowed, the amount and validity of the claim is fixed and must be paid in full. *Nolan*, 232 F.3d at 533. The rationale for this conclusion was that a debtor should not be able "to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset." *Id.* The trustee in *Adkins* attempted

to distinguish *Nolan* by arguing that the debtor had not surrendered the vehicle; rather, DaimlerChrysler had repossessed it after obtaining relief from the automatic stay. *Adkins*, 425 F.3d at 301. In response, DaimlerChrysler argued that the debtor had caused the repossession when he defaulted on his payments to the trustee. *Id.* at 302. The court agreed with DaimlerChrysler, concluding that "we believe *Nolan's* ban against post-confirmation reclassification equally applies to cases in which the Debtor's actions (i.e. default) have provided cause for the secured creditor to have the automatic stay lifted so the creditor may repossess the collateral." *Id.* at 303. The court declined to follow decisions issued subsequent to *Nolan* which had advocated the use of Code § 502(j) to reconsider a secured claim. *Id.* at 304. While advocated by the dissent in *Adkins*, the majority found that Code § 502(j) only addresses the "allowance" and "disallowance" of claims and does not apply to the reclassification of an already-allowed claim. *Id.* The court in *Adkins* pointed out that even those courts disagreed about "having a 'secured claim' exist after the sale of the original collateral, pointing to section 506(a)'s characterization of an allowed claim as a 'secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.'" *Id.* While the Court of Appeals in *Adkins* declined to reclassify the deficiency claim resulting from the sale of the collateral as an unsecured claim, the Court also noted that "secured creditors should not assume that our decision herein allows them to 'run up' the amount of the remaining deficiency through the reckless or careless actions of a repossession agent" and indicated that it would take any such damage under consideration in reviewing an amended proof of claim filed after the sale of the collateral. *Id.* at 305 n. 17.

The Hon. Karen Nelson Moore, who filed a dissent in *Adkins*, had similar concerns about what she perceived as the majority's holding which created a disincentive for creditors to act diligently. As she stated,

> [b]y guaranteeing creditors the payment of the entire amount deemed secured at the time of confirmation regardless of what the sale of collateral brings, the majority eliminates any incentive for creditors who force a sale of collateral to take care to protect the value of the collateral throughout the repossession process. Applying *Nolan* to the facts in this case allows a creditor to shift the risk of loss totally to the debtor, thereby turning the debtor into a guarantor. Debtors, not creditors, will bear the costs of reckless or careless repossession agents hired by the creditors.[6] *Id.* at 307.

*Adkins*, 425 F.3d at 307 (dissent). Accordingly, she concluded "that after a creditor-initiated sale of collateral, any deficiency claim should be reconsidered under 11 U.S.C. § 502(j)" based on her belief that "the sale of the collateral at the instigation of the secured creditor is adequate cause to reconsider a previously allowed secured claim under § 502(j)." *Id.* at 307–8. Circuit Judge Moore found that by applying Code § 502(j), a court would have the opportunity to readjust the claim based on the equities of the case. *Id.* at 308. Not only would this approach allow the court to

---

**6.** In the matter before this Court, Debtor's counsel expressed similar concerns, noting the difference in the valuation of the vehicle accepted by AmeriCredit of $15,200.95 on January 16, 2003, as listed in its proof of claim, and the $9,187.02 AmeriCredit was claiming as a deficiency, which included costs of repossession and ultimate sale approximately one year later on January 14, 2004.

consider whether the creditor acted diligently in its repossession and sale of the vehicle, it would also allow the court to examine whether the debtor contributed to the depreciation loss in bad faith. *Id.* She pointed out that in the event that it was established that the debtor had failed to adequately protect the collateral, the creditor might be entitled to an administrative expense claim.[7] *Id.*, citing *In re Johnson,* 247 B.R. 904, 909 (Bankr.S.D.Ga.1999).

With respect to the majority's conclusion that any deficiency that arose following the sale of the collateral must blindly be treated as a secured claim, Circuit Judge Moore relied on Code § 506(a) and the holding by the U.S. Supreme Court that a claim is secured only to the extent that it is secured by an interest in collateral. *Id.* at 309, citing *Till v. SCS Credit Corp.,* 541 U.S. 465, 470 n. 5, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) and *Rash,* 520 U.S. at 956, 960, 117 S.Ct. 1879. Thus, she concluded that the claim of DaimlerChrysler was no longer secured once it sold the collateral, contrary to the finding by the majority.

It is in the context of these three decisions, namely *Fowler, Matthews* and *Adkins* that this Court will analyze the matter now under consideration. There are certainly distinctions to be drawn between the three and the matter herein; however, there is also consistency to their approach. All three are concerned with the balancing of the interests of both debtor and creditor in the situation where collateral is either voluntarily or involuntarily "surrendered" postconfirmation in a chapter 13 and a deficiency exists for which no reservation of rights had previously been asserted.

The court in *Fowler* viewed it as a matter of postconfirmation modification of the plan pursuant to Code § 1329. The court in *Matthews* emphasized the necessity that a secured creditor reserve its rights to any possible deficiency claim that might arise during the chapter 13 case by asserting them in their proof of claim. Finally, in *Adkins* the majority of the circuit court concluded that Code § 1329 was inapplicable and that a secured claim, once allowed as such, remained a secured claim despite the repossession and sale of the collateral by the creditor. It rejected the approach taken by Circuit Judge Moore in her dissent that the allowance of the secured claim be reconsidered pursuant to Code § 502(j) based on its view that Code § 502(j) "addresses only the 'allowance' or 'disallowance' of claims, not the reclassification of an already-allowed claim." *Adkins,* 425 F.3d at 304.

In *Matthews* the creditor knew of the debtor's intent to surrender the vehicle and of the debtor's consent to its request for stay relief. In the matter *sub judice,* AmeriCredit did not know that the Debtor would default on his payments at the time the plan was confirmed. However, it certainly was aware of the possibility of a deficiency when it sought relief from the automatic stay to repossess and sell the vehicle. As noted previously, according to its papers, the car allegedly had depreciated in value approximately $8,000 in the period of eight months. The issue now before the Court would not have arisen had AmeriCredit reserved its right to seek a deficiency when it filed its motion for relief from the stay. In *In re Hoke,* 1996 WL 943905, at *1 (M.D.N.C. March 15, 1996), the court signed an order granting

---

**7.** As noted by the U.S. Supreme Court, "If a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use." *Assoc. Commercial Corp. v. Rash,* 520 U.S. 953, 962, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

relief from the automatic stay. The bankruptcy court, in its order, allowed the creditor ninety days in which to liquidate the collateral, an automobile, and file an amended proof of claim for any deficiency. *Id.* Unfortunately, the creditor filed its deficiency claim thirteen days after the deadline set by the court had passed. *Id.* at \*2. As a result, the court ordered the disallowance of the deficiency claim.

In this case, AmeriCredit failed to reserve its rights to a deficiency claim when it filed its motion for relief from the automatic stay and submitted its order granting the relief. Instead, it elected to file a proof of claim for the deficiency after the bar date, asserting that it is an amendment to the proof of claim it timely filed in which it asserted a secured claim. It is this latter proof of claim that the Debtor now seeks to expunge.

■ The Court believes that it must initially consider whether the claim is actually an "amended" claim as it is denominated. "To be an amended claim which relates back to the filing of the original claim, the amended claim must bear a relationship to the original claim and must simply be a correction or supplementation of that claim supported by the same operative facts which gave rise to the original claim." *In re Delmonte,* 237 B.R. 132, 135 (Bankr.E.D.Tex.1999). In *Delmonte* the debtors' plan provided that the automatic stay terminated with respect to various automobiles which served as collateral based upon a floor plan agreement. *Id.* at 134. The plan also provided for the repossession of the vehicles and that "[t]he unsecured portion of the debt, if any, shall be treated as any other unsecured creditor." *Id.* at 134–35. The court concluded that it would permit the amendment "in order for the terms of the Plan to be given their full force and effect." *Id.* at 136.

■ In the matter before this Court, there is no provision in the Debtor's plan which contemplates a deficiency claim being paid as an unsecured claim. The Court must agree with the approach taken by the court in *Matthews* and must conclude that "an amendment filed after the bar date is permitted only where the original claim provided notice to the court of the existence, nature and amount of the claim and that it was the creditor's intent, expressed in the original claim, to hold the estate liable for the claim later set forth in the amendment." *Matthews,* 313 B.R. at 493–94. In this case, AmeriCredit provided no notice that it would seek a deficiency claim in the Debtor's case in the event of a default. Therefore, the Court concludes that the proof of claim filed on January 16, 2003, failed to give notice that AmeriCredit intended to hold the estate liable in the event of a deficiency and the proof of claim filed on April 5, 2004, is not a valid amended proof of claim. Because it was not timely filed, it does not create a basis for paying AmeriCredit as a general unsecured creditor.

■ Because this Court does not consider AmeriCredit's attempt to change the status of its claim from secured to unsecured to be a valid amendment does not end the Court's discussion, however. The fact of the matter is that AmeriCredit did timely file a proof of claim. The Court does not agree with the majority in *Adkins* that AmeriCredit is entitled to receive payment on its deficiency from the Debtor's estate as a secured creditor despite the fact that it repossessed its collateral. The Court believes that the most appropriate approach under the circumstances of this case is to treat the Debtor's motion as one pursuant to Code § 502(j), as discussed by Circuit Judge Moore in her dissent in *Adkins.*

Code § 502(j) states that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). In the view of the Court, Code § 502(j) gives the Court the discretion to balance the interests of both AmeriCredit and the Debtor based on the totality of the circumstances of the case. Accordingly, the Court will reconsider AmeriCredit's claim as originally filed, factoring in the following:

1. The Debtor filed his petition, along with his proposed chapter 13 plan, on October 16, 2002.

2. AmeriCredit filed a proof of claim on January 16, 2003, asserting a secured claim in the amount of $15,200.95. The Debtor filed no objection to the claim.

3. The Debtors plan provided for payment of AmeriCredit's claim of $15,200 directly by the Debtor. There were no payments to be made by the chapter 13 trustee to AmeriCredit. AmeriCredit filed no objection to this treatment, and the Debtor's plan was confirmed on March 26, 2003.

4. AmeriCredit filed a motion seeking relief from the automatic stay on August 23, 2003, as a result of the Debtor's default in his payments to AmeriCredit of $306.10 in March 2003, asserting that the vehicle had a wholesale value of $7,150. The Court signed an Order granting the motion on September 25, 2003.

5. According to the Trustee's Final Report and Account, the Debtor completed his payments under the terms of the plan, which provided for a 100% dividend to unsecured creditors, on January 5, 2004.

6. On April 5, 2004, AmeriCredit filed what it identified as an "amended" proof of claim in the amount of $9,187.02, some six months after relief pursuant to Code § 362(d) had been granted.

7. On July 27, 2004, the Court signed an Order granting the Debtor a discharge. On July 29, 2004, AmeriCredit was served by first class mail with a copy of the Order Discharging the Debtor, c/o Deily, Mooney & Glasstetter, LLP, 8 Thurlow Terrace, Albany, New York 12203. (Docket No. 24).

8. On August 24, 2004, the chapter 13 trustee filed a letter requesting that the Debtor's case be held open, apparently because of the late filed claim of AmeriCredit.

9. On June 16, 2005, Debtor's counsel filed the motion to disallow the claim of AmeriCredit, which is presently under consideration by this Court.

■ In this case, the Debtor retained the vehicle for approximately one year postpetition (October 16, 2002—October 27, 2003). He stopped making payments on the vehicle the same month that his plan was confirmed, namely, March 2003, and AmeriCredit found it necessary to seek relief from the automatic stay in order to repossess it.[8] For purposes of this decision, the Court finds that this amounted to a pro forma surrender of the vehicle by the Debtor and a postpetition breach of the terms of his chapter 13 plan, which had promised full payment of $15,200 to AmeriCredit. In the view of the Court, a debtor should not be able to escape liability to a creditor simply by surrendering the collat-

---

8. In this regard, the Court notes that AmeriCredit delayed approximately six months (March—August 2003) before seeking such relief.

eral, whether voluntarily or involuntarily. At the same time, the creditor should not be permitted to shift the risk of loss totally to the debtor by failing to protect the value of the collateral throughout the repossession process, as noted by the dissent in *Adkins.*

The Court does not believe that the issue is one of plan modification, but rather one of claim allowance, particularly in the situation where the Debtor has received a discharge and the other creditors have been paid in full, albeit over a period of only two years. With these considerations in mind, the Court concludes that pursuant to Code § 502(j) it will give reconsideration to AmeriCredit's allowed secured claim.

■ In this case, AmeriCredit timely filed its original proof of claim on January 16, 2003, in which it asserted that it was fully secured. The Order, signed by the Court on September 25, 2003, granting AmeriCredit relief from the automatic stay upon the Debtor's default in responding to AmeriCredit's motion pursuant to Code § 362(d), contained no reservation of rights to seek a deficiency claim following repossession and sale of the Debtor's vehicle, despite asserting in its motion papers that the vehicle had depreciated in value approximately $8,000 over the period between January 16, 2003, when it filed its proof of claim, and August 23, 2003, when it filed its motion pursuant to Code § 362(d). As noted by one court,

> [t]he risk of depreciation of collateral is a risk a secured creditor always bears. That is why car loans usually bear higher interest rates than home mortgages. That is also one reason why a secured

creditor is entitled to seek a more favorable stream of payments at confirmation of the plan. When the secured creditor asserts those rights, it is planning for that risk that it might be receiving the collateral in lieu of future payments.

*Bank One, N.A. v. Leuellen,* 322 B.R. 648, 660 (S.D.Ind.2005).

In this case, AmeriCredit filed no opposition to the provision in the Debtor's plan that it continue to receive the payments of $306.10 per month directly from the Debtor. AmeriCredit has not offered any evidence of any abuse to the vehicle on the part of the Debtor which would have accounted for the $8,000 depreciation Ameri-Credit alleges. The Court also takes into account that AmeriCredit, in seeking relief from the automatic stay, delayed approximately five months before making its motion in August 2003. At the same time, the Court believes that sufficient cause has been established pursuant to Code § 502(j) by AmeriCredit to warrant the granting of an administrative expense claim pursuant to Code § 503(b) of $2,448.80 (8 X $306.10) as adequate protection for the Debtor's use of the vehicle for the period from March 1, 2003, the date of default, through October 27, 2003, the date of repossession, which takes into account the payments made by the Debtor postpetition between October 16, 2002, the date of filing of the case, and February 28, 2003. *See generally, In re Knappen,* 281 B.R. 714, 716 (Bankr.D.N.M.2002) (identifying cases that addressed the issue as a failure of adequate protection and concluding that that approach was unnecessary in connection with the matter before it).[9]

9. In reaching this conclusion, the Court emphasizes that it is not condoning a deliberate delay on the part of a creditor to seek relief from the automatic stay upon a debtor's default in order to enhance its recovery by

means of an administrative claim. On the other hand, the Court is not advocating that a motion for relief from the automatic stay be filed immediately upon default as such motions would merely serve to burden the

Based on the foregoing, it is

ORDERED that the Debtor's motion is granted to the extent of disallowing the amended claim asserting a deficiency of $9,187.02; it is further

ORDERED that AmeriCredit be allowed an administrative claim in the amount of $2,448.80 to compensate it for the depreciation of the vehicle which occurred during the eight months it remained in the Debtor's possession following default on his monthly payments as provided for in his plan.

Court's calendar unnecessarily in most in-      stances.